**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| AMY JOSEPH, individually and on behalf of all others similarly situated | : : : | Case No. 21-cv-01340 |
| Plaintiff, | : : : | Judge Robert M. Dow, Jr. Magistrate Judge Young B. Kim |
| v. | : : | |
| TGI FRIDAY'S, INC. and INVENTURE FOODS, INC. | : : : | JURY TRIAL DEMANDED |
| Defendants. | : : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND TO STRIKE NATIONWIDE CLASS ALLEGATIONS

Defendants TGI Friday's, Inc. ("TGIF") and Inventure Foods, Inc. ("Inventure") (collectively, "Defendants") submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Complaint and To Strike Nationwide Class Allegations.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND .............................................................................. 3

III.    ARGUMENT ...................................................................................................... 5

   A.    Counts I, II, and IV Fail To State A Claim ................................................. 5

      1.   Plaintiff's IFDCA Claim Should Be Dismissed Because There Is No Private Right Of Action ......................................................................................................... 5

      2.   Plaintiff's ICFA Claim Should Be Dismissed ........................................... 9

         a.   Plaintiff Fails To Comply With Rule 9(b) ......................................... 9

         b.   Plaintiff Has Failed To Adequately Allege Damages ........................11

      3.   Plaintiff's Unjust Enrichment Claim Fails To Plead She Lacks An Adequate Remedy At Law ...........................................................................................................13

      4.   TGIF Should Be Dismissed Because It Is Merely An Alleged Licensor ....................16

   B.    Plaintiff's Nationwide Class Allegations Should Be Stricken ....................19

IV.   CONCLUSION ...................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Benson v. Fannie May Confections Brands, Inc.*,
 944 F.3d 639 (7th Cir. 2019) ............................................................ 10, 11, 12, 13

*Berarov v. Archers-Daniels-Midland Company*,
 No. 16 C 7355, 2019 WL 277717 (N.D. Ill Jan. 22, 2019) ............................................ 6, 7, 8

*In re Bridgestone/Firestone, Inc.*,
 288 F.3d 1012 (7th Cir. 2002) ............................................................ 21, 22

*Camasta v. Jos. A. Bank Clothier, Inc.*,
 761 F.3d 732 (7th Cir. 2014) ............................................................ 11, 12

*City of Rockford v. Mallinckrodt ARD, Inc.*,
 360 F. Supp. 3d 730 (N.D. Ill. 2019) ......................................................... 13, 14, 15

*Cleary v. Philip Morris Inc.*,
 656 F.3d 511 (7th Cir. 2011) ............................................................ 15

*Cohen v. American Sec. Ins. Co.*,
 735 F.3d 601 (7th Cir. 2013) ............................................................ 14

*Collins v. Bentz of Naperville, Inc.*,
 No. 3-12-0443, 2013 WL 3024203 (Ill. App. Jun. 13, 2013) ........................................... 8

*Cowen v. Lenny & Larry's, Inc.*,
 No. 17-cv-1530, 2017 WL 4572201 (N.D. Ill. Oct. 12, 2017) ...................................... 22, 23

*Cuyler v. U.S.*,
 362 F.3d 949 (7th Cir. 2004) ............................................................ 6, 7

*Dachev v. Rich Am., Inc.*,
 No. 17-CV-5729, 2019 WL 423192 (N.D. Ill. Feb. 4, 2019) ............................................ 17

*Davis v. G.N. Mortg. Corp.*,
 396 F.3d 869 (7th Cir. 2005) ............................................................ 10

*Fink v. Time Warner Cable*,
 714 F.3d 739 (2d Cir. 2013) ............................................................ 10

*Fisher v. Lexington Health Care, Inc.*,
 188 Ill. 2d 455, 772 N.E.2d 1115 (1999) .................................................... 6, 7, 8

*In re: Fluidmaster, Inc., Water Connector Components Products Liability Litigation*,
    No. 14-cv-5696, 2017 WL 1196990 (N.D. Ill. Mar. 31, 2017) ...................................... 21, 24

*Hefferman v. Bass*,
    467 F.3d 596 (7th Cir. 2006) ...................................................................................9

*Hill v. Wells Fargo Bank, N.A.*,
    946 F. Supp. 2d 817 (N.D. Ill. 2013) ....................................................................20

*Hilsley v. General Mills, Inc.*,
    376 F. Supp. 3d 1043 (S.D. Cal. 2019) ...............................................16, 17, 19

*Joseph v. Avanquest North America I N*,
    Case No. 2014-ch-16729 (Cir. Ct. Cook County Oct. 15, 2014) ...........................4

*Joseph v. Beiersdof North America I*,
    Case No. 2011-ch-20147 (Cir. Ct. Cook County Jun. 6, 2011) .............................4

*Joseph v. DAP Products, Inc.*,
    Docket No. 1:14-cv-07628 (N.D. Ill. Sept. 30, 2014) .........................................4

*Joseph v. The Estee Lauder Companies*,
    Case No. 2021-ch-00699 (Cir. Ct. Cook County Feb. 16, 2021) ...........................4

*Joseph v. Lowe's Home Centers LLC*,
    Case No. 2014-ch-16891 (Cir. Ct. Cook County Oct. 17, 2014) ...........................4

*Joseph v. Lowe's Home Centers, LLC, et al.*,
    Docket No. 1:14-cv-03866 (N.D. Ill. May 27, 2014) ..........................................4

*Joseph v. Monster Inc.*,
    Case No. 2015-ch-13991 (Cir. Ct. Cook County Sept. 22, 2015) ..........................4

*Joseph v. Monster, Inc.*,
    Case No. 2020-L-001456 (Cir. Ct. Cook County Feb. 4, 2020) ...........................4

*Kasalo v. Harris & Harris Ltd.*,
    656 F.3d 557 (7th Cir. 2011) .............................................................................20

*Kubilius v. Barilla America, Inc.*,
    No. 18 C 6656, 2019 WL 2861886 (N.D. Ill. July 2, 2019) ................................20, 21, 22, 23

*McCauley v. City of Chicago*,
    671 F.3d 611 (7th Cir. 2011) ...............................................................................5

*Miles v. American Hondo Motor Co., Inc.*,
    No. 17-C-4423, 2017 WL 4742193 (N.D. Ill. Oct. 19, 2017) .............................23

*Muehlbauer v. General Motors Corp.*,
    431 F. Supp. 2d 847 (N.D. Ill. 2006)...................................................................20

*Nason v. Inventure Foods, Inc.*,
    No. 7:20-cv-10141 (S.D.N.Y. Dec. 3, 2020) .........................................................4

*Nesby v. Country Mut. Ins. Co.*,
    346 Ill. App. 3d 564, 805 N.E.2d 241 (2004) .....................................................14

*O'Connor v. Ford Motor Company*,
    477 F. Supp. 3d 705 (N.D. Ill. 2020)...............................................9, 11, 15, 16

*Parent v. Millercoors LLC*,
    No. 15-CV-1204, 2016 WL 3348818 (S.D. Ca. June 16, 2016).....................18, 19

*Phillips v. DePaul University*,
    19 N.E.3d 1019 (Ill. App. Ct. 2014).....................................................................10

*Pilgrim v. Universal Health Card, LLC*,
    660 F.3d 943 (6th Cir. 2011) ...............................................................................24

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ...............................................................................14

*Swiss Reinsurance Am. Corp. v. Access Gen. Agency, Inc.*,
    571 F. Supp. 2d 882 (N.D. Ill. 2008) ..................................................................18

*Troncoso v. TGI Friday's Inc.*,
    No. 19 CIV. 2735, 2020 WL 3051020 (S.D.N.Y. June 8, 2020) ..........................19

*United Food & Commercial Workers Union v. Walgreen Co.*,
    No. 12 C 204, 2012 WL 3061859 (N.D. Ill. Jul. 26, 2012), *affirmed*, 719 F.3d
    849 (7th Cir. 2013) ................................................................................................6

*Virnich v. Vorwald*,
    664 F.3d 206 (7th Cir. 2011) .................................................................................5

*Wright v. Family Dollar, Inc.*,
    No. 10 C 4410, 2010 WL 4962838 (N.D. Ill. Nov. 30, 2010) .............................20

*In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products
    Liability Litigation*,
    No. 3:09-md-02100, 2015 WL 7272766 (S.D. Ill. Nov. 18, 2015)........................6

**Statutes**

Illinois Consumer Fraud and Deceptive Trade Practices Act,
  815 ILCS 505/1, *et seq*....................................................................................................2

Illinois Food, Drug and Cosmetic Act,
  410 ILCS 620/4, *et seq*..............................................................................................2, 8

**Other Authorities**

Fed. R. Civ. P. 8 ..........................................................................................................18

Fed. R. Civ. P. 9 ................................................................................................. passim.

Fed. R. Civ. P. 12 .......................................................................................... 5, 12, 25

Fed. R. Civ. P. 23 ................................................................................................ passim.

## I.      INTRODUCTION

Plaintiff brings this lawsuit on behalf of herself and a putative nationwide class of consumers who purchased what she describes as TGIF brand "Mozzarella Sticks." However, she wholly fails to plead whether this lawsuit is about the mozzarella sticks appetizer commonly found in TGIF restaurants; TGIF brand Mozzarella Sticks found in grocers' freezers; TGIF brand Mozzarella Sticks Snacks, which is a shelf-stable bagged snack food most commonly found in convenience stores and gas stations alongside potato chips, pretzels and popcorn; or some other undisclosed product. Given that Plaintiff's alleged purchase of the subject product occurred very shortly after a similar action was filed in a New York federal court regarding TGIF brand Mozzarella Sticks Snacks, a crunchy, shelf-stable snack food, it is assumed that Plaintiff's Complaint pertains to that product.

Whatever product Plaintiff claims is at issue, she contends that the product's labeling (which is not depicted in the Complaint or identified in any way) was false or misleading because the product contained no mozzarella cheese. However, the surprisingly sparse details provided by Plaintiff regarding the product's attributes and labeling leaves Defendants and this Court guessing as to what product she actually purchased, what its label looked like, and, glaringly, without any means to measure the reasonableness and veracity of her claims. And while Plaintiff claims that the common and ordinary meaning of the term "mozzarella sticks" is a "breaded snack food containing mozzarella cheese (and only mozzarella cheese)" and describes "mozzarella sticks" as a hot appetizer that contains a solid piece of mozzarella cheese, covered with breading and seasoning, deep fried, and then served with a side of marinara sauce, she wholly fails to allege whether she expected to receive a product with those characteristics when purchasing the product in question from Amazon.com. In fact, Plaintiff provides no details as to what she expected to receive as a result of her alleged purchase.

Plaintiff's bare allegations fail to meet a notice pleading standard, let alone the heightened pleading standard of Federal Rule of Civil Procedure 9(b) associated with her fraud-based claims. This, among other deficiencies, commands that Plaintiff's Complaint be dismissed and her nationwide class allegations be stricken.

**First**, Plaintiff alleges a violation of the Illinois Food, Drug and Cosmetic Act ("IFDCA"), claiming that the product at issue was "misbranded." Courts in this District, however, have repeatedly concluded that there is no private right of action under the IFDCA, and, as a result, this claim should be dismissed.

**Second**, Plaintiff alleges a violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"). Because the ICFA sounds in fraud, it is subject to the pleading standards in Rule 9(b). Under Rule 9(b), Plaintiff must allege the "who, what, when, where, and how" of the alleged fraud. Plaintiff's Complaint falls short in this regard. For example, Plaintiff must identify "what" she purportedly reviewed and relied upon when making her purchase. As stated, Plaintiff fails to describe the labeling of the product in any substantive way, let alone with the particularity required. Indeed, Plaintiff's description of the product's labeling in the Complaint is limited to two words contained on the principal display panel—"mozzarella sticks." It is well-established, however, that a single statement on a product's label cannot be taken in isolation and the totality of labeling must be analyzed to assess whether a reasonable consumer could be misled. Without providing the entirety of what Plaintiff allegedly reviewed at the time of her purchase, she fails to state a claim upon which relief can be granted.

The ICFA claim fails for an additional reason. An essential element of an ICFA claim is that a plaintiff suffered "actual damage" due to the purported deceptive conduct. Here, Plaintiff alleges that the subject product was "worthless" due to the alleged absence of mozzarella, but there

are no factual allegations to support this conclusory statement. Indeed, Plaintiff does not assert any allegations that the only "value" in the subject product was from mozzarella cheese or how what she received was worth any less than what she expected to receive (whatever that may have been). The Seventh Circuit has confirmed that conclusory statements without accompanying factual allegations are insufficient to state a claim for "actual damage."

**Third**, Plaintiff alleges a "Violation of the Consumer Fraud and Deceptive Trade Practices Acts of the Various States and District of Columbia." Of course, Plaintiff is not pursuing—and cannot pursue—these claims on behalf of herself or an Illinois class. Rather, Plaintiff advances this claim in hopes of ultimately representing a nationwide class of consumers. However, the Seventh Circuit, in no uncertain terms, has expressed its disfavor for nationwide classes, and any nationwide class allegations should be stricken.

**Fourth**, Plaintiff alleges a cause of action for unjust enrichment. As Plaintiff acknowledged in her Complaint, a cause of action for unjust enrichment is available only when there is no adequate remedy at law. Plaintiff has not affirmatively alleged that she lacks an adequate remedy at law. As a result, this claim should be dismissed accordingly.

For these reasons and those additional reasons more fully set forth below, it is respectfully requested that Plaintiff's Complaint be dismissed and her nationwide class allegations be stricken.

## II.  FACTUAL BACKGROUND

Amy Joseph is a serial class action plaintiff. Within the past ten years, she has filed no less than eight class action lawsuits in Illinois state and federal courts.[1] In fact, in the two most recent

---

[1] These lawsuits are: *Joseph v. Beiersdof North America I*, Case No. 2011-ch-20147 (Cir. Ct. Cook County Jun. 6, 2011); *Joseph, et al v. Lowe's Home Centers, LLC, et al.*, Docket No. 1:14-cv-03866 (N.D. Ill. May 27, 2014); *Joseph v. DAP Products, Inc.*, Docket No. 1:14-cv-07628 (N.D. Ill. Sept. 30, 2014); *Joseph v. Avanquest North America I N*, Case No. 2014-ch-16729 (Cir. Ct. Cook County Oct. 15, 2014); *Joseph v. Lowe's Home Centers LLC*, Case No. 2014-ch-16891 (Cir. Ct. Cook County Oct. 17, 2014); *Joseph v. Monster Inc.*, Case No. 2015-ch-13991 (Cir. Ct. Cook County Sept. 22, 2015); *Joseph v. Monster, Inc.*,

class actions filed by Plaintiff in the Circuit Court of Cook County – *Joseph v. Monster, Inc.*, Case No. 2020-L-001456 and *Joseph v. The Estee Lauder Companies*, Case No. 2021-ch-00699 – she is represented by the same counsel as here, and the *Estee Lauder* matter is currently pending before this Court.

Plaintiff alleges that she purchased six bags of the product from Amazon in January of 2021 and, at the time of her alleged purchase, only the product's front label was visible to her. Dkt. No. 1-1, Complaint at ¶¶ 52-53. Notably, Plaintiff does not specifically identify or describe the front packaging she saw, or whether it matched the packaging she ultimately received. Plaintiff further does not describe any other information that was provided to her on the Amazon webpage where she claims to have purchased the product.

Considering Plaintiff's proclivity for filing class action lawsuits, the timing of her alleged purchase of the subject product is particularly suspect as it was made approximately one month after a similar class action lawsuit was filed in the United States District Court for the Southern District of New York. That lawsuit also involves TGIF-brand Mozzarella Sticks Snacks.[2]

Regardless of Plaintiff's motives for purchasing the product, within one month after her alleged purchase she commenced this lawsuit by filing a Complaint in the Circuit Court of Cook County, Illinois, on February 5, 2021. *See* Dkt. No. 1-1, Complaint. The Complaint asserts claims for (1) violation of the IFDCA; (2) violation of the ICFA; (3) violation of the consumer fraud and deceptive trade practices acts of all 50 states and the District of Columbia; and (4) unjust enrichment. *See generally id.* Plaintiff asserts claims on behalf of herself and two putative classes: an Illinois class (for Counts I and II) and a nationwide class (for Counts III and IV). *Id.* Defendants

---

Case No. 2020-L-001456 (Cir. Ct. Cook County Feb. 4, 2020); and *Joseph v. The Estee Lauder Companies*, Case No. 2021-ch-00699 (Cir. Ct. Cook County Feb. 16, 2021).

[2] *See Nason v. Inventure Foods, Inc.*, No. 7:20-cv-10141 (S.D.N.Y. Dec. 3, 2020).

removed the Complaint to this Court on March 10, 2021. *See* Dkt. No. 1, Notice of Removal.

## III.  ARGUMENT

### A.  Counts I, II, and IV Fail To State A Claim

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Dismissal for failure to state a claim under Rule 12(b)(6) is proper 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'" *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). A "complaint must contain allegations that 'state a claim to relief that is plausible on its face' or it is subject to dismissal under Rule 12(b)(6)." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* "That is, the complaint must contain 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief." *Id.*

To have "facial plausibility," a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "the court must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor," it is important to note that "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption." *Id.* "Making the plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (internal citations omitted).

### 1.  Plaintiff's IFDCA Claim Should Be Dismissed Because There Is No Private Right Of Action

There is neither an explicit nor implicit private right of action under the IFDCA and, therefore, this claim should be dismissed. This District has acknowledged that there is "nothing in the text of the Act [that] offers an explicit right of action." *Berarov v. Archers-Daniels-Midland*

*Company*, No. 16 C 7355, 2019 WL 277717 at *6 (N.D. Ill Jan. 22, 2019); *see also United Food & Commercial Workers Union v. Walgreen Co.*, No. 12 C 204, 2012 WL 3061859 at *3 (N.D. Ill. Jul. 26, 2012) ("As Defendants correctly point out . . . the ILFDCA . . . [does] not create a private right of action."), *affirmed*, 719 F.3d 849 (7th Cir. 2013); *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation*, No. 3:09-md-02100, 2015 WL 7272766 at *4 n.1 (S.D. Ill. Nov. 18, 2015) (noting plaintiff could not "pursue a claim under [the ILFDCA] because this statute does not provide for a private right of action").

Here, despite the foregoing authority and the Seventh Circuit's acknowledgment of the Illinois Supreme Court's "reluctance to imply private rights of action," *Cuyler v. U.S.*, 362 F.3d 949, 955 (7th Cir. 2004), Plaintiff asserts in her Complaint that the Court should imply a private right of action under the IFDCA. *See* Dkt. No. 1-1, Complaint at ¶ 80. However, implying a private right of action occurs only when four factors are present: "(1) plaintiff is a member of the class for whose benefit the statute was enacted, (2) it is consistent with the underlying purpose of the statute, (3) plaintiff's injury is one the Act was designed to prevent, and (4) it is necessary to provide an adequate remedy for violations of the statute." *Cuyler*, 362 F.3d at 954 (referencing the "standard . . . used by the Illinois courts to determine whether to read a damages remedy into a statute" and quoting *Noyola v. Board of Education*, 179 Ill.2d 121, 227 Ill. Dec. 744, 688 N.E.2d 81, 85 (1997)). *See also Fisher v. Lexington Health Care, Inc.*, 188 Ill.2d 455, 460, 772 N.E.2d 1115, 1117-18 (1999) (noting "private right of action is appropriate if: (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute").

Applying the above factors together with Illinois courts' "reluctance to imply private rights of action," *Cuyler*, 362 F.3d at 955, Plaintiff's claim under the IFDCA fails. In *Fisher*, the Illinois Supreme Court analyzed whether the plaintiffs (former employees of the defendant) could pursue a private right of action under Illinois' Nursing Home Care Act ("ILNHCA"). 772 N.E.2d at 1117, 188 Ill.2d at 459. In assessing whether to imply a private right of action, the Illinois Supreme Court noted that the ILNHCA "expressly provides numerous sanctions and remedies to accomplish its goal of protecting nursing home residents" and that a "nursing home that violates the Act may be liable for damages to a resident, and may be subjected to penalties, including heavy fines and license suspension or revocation." *Id.* at 1121, 188 Ill.2d at 466. The Illinois Supreme Court further noted that the Illinois "legislature provided a statutory framework to encourage reporting of violations and to punish retaliation" and that the "legislature could have gone further and granted employees a private action for damages, but it did not do so." *Id.* at 1122, 188 Ill.2d at 467. In holding that an implied right of action under the ILNHCA does not exist, the Illinois Supreme Court explained that "[w]e cannot say that the statutory framework the legislature did provide is so deficient that it is necessary to imply a private right of action for employees in order to effectuate the purpose of the Act." *Id.*

Perhaps even more relevant to Plaintiff's instant claim, this District relied on *Fisher* to specifically reject a private right of action under the IFDCA in *Berarov*. There, the plaintiffs brought multiple class action claims against the manufacturer of certain horse feed, including a claim under the IFDCA. 2019 WL 277717 at *1. Applying *Fisher*'s rationale and concluding that it did "not think the Illinois Supreme Court would imply a private right of action," the Court explained:

> The same is true in this case [as in *Fisher*], where the legislature, instead of including a private right of action, made violations a

7

> misdemeanor, gave state's attorneys the duty to bring proceedings when the "Director reports any violations of this Act," and gave the Director the power to seek injunctive relief. *See* 410 ILCS 620/4; 410 ILCS 620/5; 410 ILCS 620/7. Thus, this Court does not think the Illinois Supreme Court would imply a private right of action in the Illinois Food, Drug and Cosmetic Act. *See also Collins v. Bentz of Naperville*, Case No. 3-12-433, 2013 IL App (3d) 120443-U at *5) (Westlaw) (Ill. App. 3d June 14, 2013) ("there are available statutory remedies [under the ILFDCA] and an implied private right of action is not necessary").

*Id.* at *6 (first alteration added; second alteration in original).

As noted in *Berarov*, at least one Illinois Appellate Court, *Collins v. Bentz of Naperville, Inc.*, No. 3-12-0443, 2013 WL 3024013 (Ill. App. Jun. 13, 2013), concluded that there is no private right of action under the IFDCA. In *Bentz*, the plaintiffs alleged the defendant violated the Illinois Food Service Sanitation Code (the "Code"). *Id.* at *2. The court explained that the Code's regulations are applicable to, among other things, the IFDCA. *Id.* at *3. In refusing to imply a private right of action, the court noted that the IFDCA—among other statutes—"provide remedies for their violation" and no "implied private right of action" was "necessary." *Id.* at *5.

Here, Plaintiff's allegations do not demonstrate that a Court should imply a private right of action. With respect to the fourth factor, Plaintiff alleges that implying a private right of action "is necessary to effectuate the purpose of the Illinois FDCA because the statute would be rendered meaningless if it could not be enforced. There would be no incentive keeping food manufacturers and sellers from misrepresenting food products to consumers if they could not be held liable to consumers for those misrepresentations." *See* Dkt. No. 1-1, Complaint at ¶ 84. This statement, however, wholly ignores the powers provided to the Director under the IFDCA, the threat of criminal prosecution for its violation, and the case law wherein courts refused to find an express or implied right of action under the IFDCA. This clearly demonstrates that Plaintiff has failed to state a cause of action under the IFDCA that cannot be cured by amendment. As a result,

Defendants respectfully request dismissal of this claim with prejudice.

### 2. Plaintiff's ICFA Claim Should Be Dismissed

#### a. Plaintiff Fails To Comply With Rule 9(b)

Plaintiff's allegations in support of her ICFA fail to satisfy Rule 9(b). An ICFA claim requires allegations of: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception." *O'Connor v. Ford Motor Company*, 477 F. Supp. 3d 705, 718 (N.D. Ill. 2020) (Dow, J.). "Where an ICFA claim rests on allegations of deceptive conduct, Rule 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud." *Id.* "This means as a practical matter that [a party] must identify the 'who, what, when, where, and how' of the alleged fraud." *Id.* More specifically, "Rule 9(b) requires that facts such as 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation as communicated to the plaintiff' be alleged in detail." *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006).

Plaintiff's allegations fall short of the heightened pleading requirement of Rule 9(b). Most notably, Plaintiff does not identify the product she allegedly purchased, let alone the labeling she claims to have reviewed prior to her purchase of the product or the other information about the product provided on the Amazon webpage. Courts have repeatedly explained that an examination of allegedly-deceptive labeling must be viewed in the context of **all** information available to Plaintiff, including the entire packaging; otherwise, it is impossible to assess whether a "reasonable consumer" would be misled. *See, e.g.*, *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) ("[W]hen analyzing a claim under the ICFA, the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff.")

(internal citations and quotations omitted); *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005) (applying similar standard); *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("The primary evidence in a consumer-fraud case arising out of allegedly false advertising is, of course, the advertising itself. And in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."); *Phillips v. DePaul University*, 19 N.E.3d 1019, 1031 (Ill. App. Ct. 2014) ("Further, in analyzing whether plaintiffs sufficiently alleged a deceptive act or practice committed by [the defendant] in the publication of its employment information, we note that the analysis must consider whether the act was deceptive as reasonable understood in light of *all the information* available to plaintiffs.").

Plaintiff has not alleged the context in which she claims to have reviewed the subject product labeling. In the context of a store purchase, Plaintiff would have seen, at a minimum, the entirety of the front label of the subject product. Plaintiff, however, allegedly purchased the product from Amazon.com, where there is almost always additional product information provided to consumers. But Plaintiff alleges virtually *nothing* about the labeling of the subject product, the context in which she viewed the subject labeling, or any other information with which she was provided at the time of her alleged purchase. Instead, Plaintiff cherry-picked a single phrase from the subject product's labeling (i.e., "mozzarella sticks") in isolation and suggests that this phrase is deceptive without providing any other context, including other statements that may have appeared on the product's labeling or on the Amazon webpage. Permitting Plaintiff to proceed with alleging less than the entirety of the packaging she allegedly reviewed and the Amazon webpage from which she made her alleged purchase—either through graphical representations or words—would open the doors to frivolous litigation. This is the exact reason why the Seventh Circuit has repeatedly stated that a product's label must be analyzed in its totality. *See Benson*,

10

*supra.* Here, Plaintiff fails to include a copy of any portion of the product's label or Amazon's webpage with her Complaint. As a result, Plaintiff prevents the Court from examining her claims in light of the totality of the information available to her when making her alleged purchase, and she fails to state her ICFA claim with the particularity required.

  **b.**  <u>**Plaintiff Has Failed To Adequately Allege Damages**</u>

  Plaintiff's ICFA claim fails because she has not sufficiently alleged actual damages. As noted above, an allegation of "actual damage" as "a result of the [alleged] deception" is a critical element to state a claim. *O'Connor*, 477 F. Supp. 3d at 718. *See also Camasta v. Jos. A. Bank Clothier, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) ("When the plaintiff is a private party . . ., an action brought under the ICFA requires the plaintiff to show he suffered 'actual damage' as a result of the defendant's violation of the act."). "In other words, she must plausibly plead that the deceptive or unfair act caused her to suffer actual damages, meaning pecuniary loss," which may occur "if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'" *Benson*, 944 F.3d at 647. Allegations of "actual damages" must be alleged with factual allegations and not simply conclusory statements. *Camasta*, 761 F.3d at 739-40.

  The Seventh Circuit's analysis in *Benson* is helpful. There, the plaintiff purchased chocolates at the defendant's store. *Benson*, 944 F.3d at 644. According to the plaintiffs, they "were dismayed to find that the boxes were not brimming with goodies;" instead, "the boxes appeared to be only about half full." *Id.* The plaintiffs paid $9.99 plus tax for their purchase and claimed that the candy boxes contained 33% and 38% "empty space." *Id.* The plaintiffs claimed "that [they] would not have purchased the chocolate if [they] had known that there was so much empty space inside the box." *Id.* In assessing the claim to damages, the Seventh Circuit explained that neither plaintiff alleged that the chocolates in the box were worth less than what they paid. *Id.*

at 648. Nor did they claim that the chocolates were "defective or that they could have acquired them for a better price." *Id.* Rather, the plaintiffs claimed "that they would not have purchased the candy if they had known the amount of slack-fill." *Id.* The Seventh Circuit concluded, however, that "this assumes that they were injured, and that assumption is inconsistent with *Camasta.*" *Id.* The Seventh Circuit further explained:

> In our case, Benson and Smith never said that the chocolates they received were worth less than the $9.99 they paid for them, or that they could have obtained a better price elsewhere. That is fatal to their effort to show pecuniary loss. Moreover, their request for damages based on the percentage of nonfunctional slack-fill is quite vague. They do not explain how a percentage refund of the purchase price based on the percentage of nonfunctional slack-fill corresponds to their alleged harm. They thus failed to raise a plausible theory of actual damage, and so their allegations that Fannie May violated the ICFA were properly dismissed on the pleadings.

*Id.*

While this matter does not involve "slack-fill" allegations, the Seventh Circuit's rationale is no less applicable. Like *Benson*, Plaintiff here alleges that she would not have purchased the subject product had she known there was no mozzarella cheese in it. *See, e.g.*, Dkt. No. 1-1, Complaint at ¶¶ 47, 48, 51, 60, 61, 78, 101, 104, 116, 131. However, unlike the plaintiff in *Benson* who sought damages in the amount of the percentage of the slack-fill in the product, Plaintiff here claims that the subject product was "worthless" because of the purported lack of mozzarella cheese. *Id.* at ¶¶ 59, 78, 104, 119, 132. These are mere conclusory allegations inasmuch as Plaintiff offers no factual support for why a product—which was apparently consumed, in part, by Plaintiff and putative class members—was "worthless" due to the alleged lack of mozzarella cheese. Similarly, Plaintiff offers no factual support, as is required by *Twombly*, for her bare allegation that mozzarella cheese in general "command[s] a premium in the marketplace." *See* Dkt. No. 1-1, Complaint at ¶ 12. In fact, Plaintiff's entire Complaint is bereft of a single allegation,

12

let alone a factually-supported allegation, that a product made with cheddar cheese is somehow worth less than a product made with mozzarella cheese.

At most, Plaintiff alleged that she ate the contents of one of the packages she purchased and "tasted" cheddar cheese—not mozzarella cheese. *Id.* at ¶ 58. Notwithstanding the subjective nature of "taste," this is insufficient to plausibly state that Plaintiff received something of lesser value than what she paid or that the subject product was "worthless." Without plausible allegations that Plaintiff suffered damages, her ICFA claim should be dismissed.

### 3. Plaintiff's Unjust Enrichment Claim Fails To Plead She Lacks An Adequate Remedy At Law

Plaintiff's unjust enrichment claim is insufficient as a matter of law and, as such, should be dismissed.

First, unjust enrichment is an equitable claim which requires that there be no adequate remedy at law. "In order to state an unjust enrichment claim under Illinois law, a plaintiff must allege 'a benefit mistakenly conferred, a benefit procured through wrongful conduct, and a benefit to which plaintiff has a better claim than the defendant for some other reason.'" *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 771 (N.D. Ill. 2019). Along with the above elements, Plaintiff is also required to allege there is no adequate remedy at law. *Id.* ("In addition, Illinois law requires that relief under an unjust enrichment theory is obtainable only when there is no adequate remedy at law available to the plaintiff."). Importantly, while it is permissible for a plaintiff to plead an unjust enrichment claim "in the alternative . . . in doing so within that claim, [she] will have to plead that none of the many other causes of action in the [Complaint] in which it alleges it is entitled to damages is viable." *Id.* Indeed, according to the Seventh Circuit, "[b]ecause it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law." *Cohen v. American Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013). *See also id.*

13

("no equitable remedy can lie where a legal one is available"); *Nesby v. Country Mut. Ins. Co.*, 346 Ill. App. 3d 564, 567, 805 N.E.2d 241, 243 (2004) ("Because it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law."). In *Cohen*, the Seventh Circuit acknowledged that a plaintiff could plead, for example, the existence of an express contract to confer liability on the defendant or, in the alternative, if there was no express contract, that the defendant could be liable under a theory of unjust enrichment. 735 F.3d at 615. This is consistent with a Ninth Circuit decision which, relying on Supreme Court precedent, concluded that a plaintiff must affirmatively establish there is no adequate remedy at law before pursuing a claim for equitable relief. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (noting plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution" and that she failed to do so because "the operative complaint does not allege that [plaintiff] lacks an adequate remedy at law").

Here, however, Plaintiff has failed to plead within her unjust enrichment count that she lacks an adequate remedy at law. In an apparent attempt to bypass this requirement, Plaintiff alleges the general statement of law that "[w]hen a specific contract does not govern the relationship of the parties, and, therefore, no adequate remedy at law is applicable, an equitable remedy under a theory of unjust enrichment is available." *See* Dkt. No. 1-1, Complaint at ¶ 121. However, this allegation does not allege that she has no adequate remedy at law. It merely states that when there is no contract, then an equitable remedy "is available." This falls short of what is required by case law from the Seventh Circuit and this District. In alleging her unjust enrichment claim, Plaintiff must "plead that none of the many other causes of action in the [Complaint] in which it is entitled to damages is viable." *City of Rockford*, 360 F. Supp. 3d at 771. Plaintiff has not done so, and her unjust enrichment claim should accordingly be dismissed.

If Plaintiff's unjust enrichment claim is not dismissed for failure to plead she has no adequate remedy at law, it should nevertheless be dismissed for the same reasons that her other claims are dismissed. As the Seventh Circuit has explained, "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). This Court has concluded the same in *O'Connor v. Ford Motor Company*, 477 F. Supp. 3d 705 (N.D. Ill. 2020) (Dow, J.). There, this Court stated "Defendant argues that Plaintiff's unjust enrichment claim fails because it is premised on the same conduct underlying Plaintiff's legally deficient ICFA claim and because it independently fails to satisfy Rule 9(b). The Court agrees and will dismiss the unjust enrichment claim as well." *Id.* at 720.

Here, the heart of Plaintiff's unjust enrichment claim is that the subject product was "misrepresented" to "contain mozzarella cheese." *See* Dkt. No. 1-1, Complaint at ¶¶ 124-34. This is the same factual predicate underlying Plaintiff's other claims, including a claim under the ICFA. *Id.* at ¶¶ 87-104. Moreover, Plaintiff's theory of damages for her unjust enrichment claim is nearly identical to the theory for her ICFA claim. *Compare id.* at ¶ 130 (unjust enrichment claim) ("Defendants profited at the expense of Plaintiff and Class members in connection with each individual sale of Mozzarella Sticks because Plaintiff and Class members paid money for products that were worthless due to the fact that they do not contain any mozzarella cheese.") *with id.* at ¶ 104 (ICFA claim) ("As a direct and proximate result of Defendants' unfair and deceptive acts or practices, Plaintiff and members of the Illinois Subclass suffered damages by purchasing the Mozzarella Sticks because they would not have purchased the Mozzarella Sticks had they known the truth, and they received a product that was worthless because it contains no mozzarella

cheese."). For the same reasons that Plaintiff's ICFA claim is insufficient as discussed above, including the failure to comply with Rule 9(b), Plaintiff's unjust enrichment claim should similarly be dismissed. *See O'Connor*, 477 F. Supp. 3d at 720-21 (noting unjust enrichment and ICFA claim were "premised on the same factual allegations" and because ICFA claim did not "comply with Rule 9(b)," unjust enrichment claim would "be dismissed along with the ICFA claim").

### 4. TGIF Should Be Dismissed Because It Is Merely An Alleged Licensor

Plaintiff's claims against TGIF should be dismissed because TGIF merely licensed its name for the subject product. Plaintiff alleges that Inventure "distributes" the subject product, Dkt. No. 1-1, Complaint at ¶ 24, and further concedes that "the textual and graphic content on packaging of the [product] is copyrighted by [TGIF] and is being used under license by Inventure." *Id.* Under these circumstances, there can be no liability against TGIF.

The Southern District of California rejected claims against a licensor under similar circumstances in *Hilsley v. General Mills, Inc.*, 376 F. Supp. 3d 1043 (S.D. Cal. 2019). There, the plaintiff brought claims that the representations "no artificial flavors" and "naturally flavored" on the labeling of fruit snacks were misleading because the products allegedly contained malic acid. *Id.* at 1046. The claims were asserted against the manufacturer, distributor, advertising agencies, and media companies "which licensed the use of children's cartoon characters for marketing." *Id.* As to the licensing defendants, the plaintiff alleged "[d]ue to the pervasive presence of [their] character[s] in the Product's marketing and labeling, [they are] alleged under California law to have both enterprise and apparent-manufacturer liability . . . ." *Id.* at 1051. The court found that these allegations were "too bare and conclusory to be 'entitled to the assumption of truth'" and did "not provide the facts necessary to raise her 'right to relief above the speculative level.'" *Id.*

Here, like in *Hilsley*, Plaintiff's allegations against TGIF as a mere licensor are insufficient to "raise her 'right to relief above the speculative level'" and, as such, she has not stated a claim

16

against it. In fact, Plaintiff's allegations regarding TGIF are even less specific than those discredited in *Hilsley*. For example, rather than separately alleging the purported wrongful conducted attributable to each Defendant, she combines her allegations among both Defendants. Specifically, she repeatedly refers to the defendants as "individually and acting jointly, collectively, and in concert together." Such allegations fail Rule 8 and 9(b) pleading standards. *See* Dkt. No. 1-1, Complaint at ¶¶ 22-26. Courts in this District make clear that allegations that lump all defendants together without informing each defendant of the specific acts that constitute the basis of the action against it do not satisfy federal pleading standards. *See Dachev v. Rich Am, Inc.*, No. 17-CV-5729, 2019 WL 423192, at *13 (N.D. Ill. Feb. 4, 2019) (stating, "[a]lthough Plaintiff also alleges misconduct by Defendants generally, a complaint cannot "lump multiple defendants together[.]" Rather, a complaint should "inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant.") (internal citations omitted); *Swiss Reinsurance Am. Corp. v. Access Gen. Agency, Inc.*, 571 F. Supp. 2d 882, 884-86 (N.D. Ill. 2008) (same, analyzing claims under Rule 8). In search of a claim against TGIF, Plaintiff impermissibly jumbles TGIF together with Inventure in conclusory, all-encompassing allegations that fail to satisfy Rules 8 and 9(b). And when Plaintiff does get more specific, she defines the role of TGIF as a mere "trademark licensor." *See* Dkt. No. 1-1, Complaint at ¶ 24 (""TGI Friday's' is a registered trademark of TGI and is being used under license by Inventure").

Based upon the foregoing, it is clear that Plaintiff's failure to delineate the alleged wrongful acts of TGIF from Inventure warrants dismissal of all claims against TGIF. However, even if Plaintiff's broad allegations are accepted by this Court, they still fail to state a claim against TGIF, and TGIF would be entitled to dismissal. Instructive on this issue is *Parent v. Millercoors LLC*, No. 15-CV-1204, 2016 WL 3348818 (S.D. Ca. June 16, 2016). In *Parent*, the plaintiff brought suit

because the defendant allegedly "created the deceptive and misleading impression that Blue Moon is a 'craft beer.'" *Id.* at *1. More specifically, Plaintiff claimed, without any factual support, that the Defendant endorsed third party advertisements for craft beer sales, which include Blue Moon, based on the advertisements featuring Defendant's trademark" and also that "because advertisements created by third parties 'feature Defendant's trademark protected logo,' such advertisements 'were created with Defendant's knowledge and consent, if not at Defendant's direction.'" *Id.* Rejecting the plaintiff's claim, the court explained "the law is clear and dispositive [that a] trademark owner's grant of permission to another to use the owner's mark, combined with efforts to 'police' such use, do not make the user the agent or intermediary of the owner. The owner may retain sufficient control to protect and maintain its interest in the mark without establishing an agency relationship." *Id.* "Put another way, '[t]he use of such a mark does not constitute an endorsement.'" *Id.* Given Plaintiff's failure to comport her pleadings with the requirements of Rule 8 and 9(b), it is impossible for Defendants to decipher which conduct Plaintiff actually attributes to TGIF. Nevertheless, it is clear that TGIF's participation in the one role Plaintiff actually ascribes to it–a mere trademark licensor–does not render it liable for the alleged improper acts of the product's manufacturer. *Hilsley*, 376 F. Supp. 3d at 1051.

Finally, claims similar to those alleged against TGIF here have been rejected by at least one other district court. Upon review of similar allegations involving alleged improper labeling of another Inventure product advertised using TGIF's marks, the Southern District of New York dismissed claims against TGIF. *Troncoso v. TGI Friday's Inc.*, No. 19 CIV. 2735, 2020 WL 3051020 (S.D.N.Y. Jun. 8, 2020). In doing so, the Southern District concluded:

> [T]he fact that TGIF has licensed its trademark to Inventure does not suggest that TGIF was involved in any aspects of the labeling beyond its own trademark, which Plaintiff does not allege is misleading. And Plaintiff's allegation that TGIF had control over

> the marketing of the chips — and thus, presumably, the snack chips' misleading labeling — is wholly conclusory.

*Id.* at *11

Plaintiff's claims against TGIF are no different than the claims in *Hilsley*, *Parent*, and *Troncoso*, and TGIF should accordingly be dismissed from this matter.

## B. Plaintiff's Nationwide Class Allegations Should Be Stricken

Plaintiff's nationwide class allegations should be stricken because such class definitions are inherently unmanageable, and there is no amount of discovery Plaintiff could seek that would cure the fundamental deficiencies in certifying such a class. The questions before the Court on this issue are: (1) whether it is proper to address the sustainability of class allegations at the pleading stage; and (2) whether a nationwide class such as that which Plaintiff advances here is disfavored by the Seventh Circuit. The answer to both questions is "yes."

With respect to the first inquiry, there is no prohibition on assessing the viability of class allegations at the pleading stage. To the contrary, the Federal Rules encourage that a determination as to class certification be made at "an early practicable time." *See* Fed. R. Civ. P. 23(c)(1)(A); *see also Muehlbauer v. General Motors Corp.*, 431 F. Supp. 2d 847, 870 (N.D. Ill. 2006) ("Plaintiffs do not object to our authority to review the class allegations at this early juncture. That authority stems from Rule 23(c)(1)(A) and (d)(4)."). [3] Indeed, case law has acknowledged the propriety of challenges to class allegations at the pleading stage. *See, e.g.*, *Kasalo v. Harris & Harris Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) ("Consistent with [Rule 23(c)(1)(A)], a court may deny class certification even before the plaintiff files a motion requesting certification. This is because a court has 'an independent obligation to decide whether an action brought on a class basis

---

[3] In *Muehlbauer*, the Court noted that Rule 23(d)(4) "authorizes the court to require 'that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons.'" *Id.* at 870. Similar language now appears in Federal Rule of Civil Procedure 23(d)(1)(D).

is to be so maintained even if neither of the parties moves for a ruling under subdivision (c)(1)[.] It need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination[.]") (internal citations omitted); *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013) (finding argument "that no procedural mechanism empowers the court to decide at the pleading stage whether the suit will be permitted to proceed as a class action" as "incorrect" and explaining "sometimes the complaint will make it clear that class certification is inappropriate"); *Kubilius v. Barilla America, Inc.*, No. 18 C 6656, 2019 WL 2861886 at *2 (N.D. Ill. July 2, 2019) ("In particular, where a defendant raises a legal challenge to class certification, courts in the Seventh Circuit and elsewhere have held that resolution of the issues may be appropriate on the pleadings."); *Wright v. Family Dollar, Inc.*, No. 10 C 4410, 2010 WL 4962838 at *1 (N.D. Ill. Nov. 30, 2010) (noting "District courts, both within this district and others, have held that a motion to strike class allegations made pursuant to [Rules 23(c)(1)(A) and 23(d)(1)(D)] is an appropriate device to determine whether the case will proceed as a class action" and "when the defendant advances a legal argument based on the pleadings, discovery is not necessary for the court to evaluate whether a class action may be maintained"). Based on the above, this Court can—and, respectfully, should—assess whether Plaintiff's nationwide class actions should be dismissed at the pleading stage.

The next issue, therefore, is whether Plaintiff's nationwide class allegations should be dismissed. The Seventh Circuit has long affirmed that nationwide classes are not manageable when they implicate laws of numerous states. *See In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002) ("Because these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable."). In fact, this Court has acknowledged that a nationwide class premised upon various state consumer protection statutes is a "logistical

and procedural nightmare." *In re: Fluidmaster, Inc., Water Connector Components Products Liability Litigation*, No. 14-cv-5696, 2017 WL 1196990 at *48 (N.D. Ill. Mar. 31, 2017) (Dow, J.) (quoting *Block v. Abbott Labs.,* No. 99 C 7457, 2002 WL 485364 at *5 (N.D. Ill. Mar. 29, 2002)).

Because of the Seventh Circuit's disfavor of nationwide classes and the inherent unmanageability of same, Courts throughout this Circuit have stricken and/or dismissed nationwide class allegations at the pleading stage. For instance, in *Kubilius*, the plaintiff brought a consumer class action because the defendant had labeled its pasta sauce as containing "no preservatives" when it allegedly contained "citric acid—an ingredient known to function as a preservative." 2019 WL 2861886 at *1. Like Plaintiff here, the plaintiff in *Kubilius* asserted claims on behalf of a nationwide class under the ICFA "and the 'substantively similar consumer protection laws' of the remaining forty-nine states and the District of Columbia." *Id.* The defendant moved to strike the class allegations, in part, because "a nationwide class action would be unmanageable because of differences among the various states' fraud and consumer protection laws." *Id.* In deciding whether to strike the nationwide class allegations, the Court noted that "apparent from the complaint is that plaintiff's statutory and common law consumer fraud claims cannot feasibly be maintained as a nationwide class action." *Id.* at *2. Quoting the Seventh Circuit in *In re Bridgestone/Firestone, Inc.*, the Court acknowledged that the "Seventh Circuit has made clear that actions such as the one plaintiff proposes are disfavored" and that the Seventh Circuit had concluded that a nationwide class was not proper "because the plaintiffs' claims implicated the consumer protection laws of all fifty states." *Id.* The Court ultimately struck the nationwide class allegations. *Id.* at *3.

In *Cowen v. Lenny & Larry's, Inc.*, No. 17-cv-1530, 2017 WL 4572201 (N.D. Ill. Oct. 12, 2017), the plaintiff brought claims relating to the labeling of the defendant's cookie products. *Id.*

at *1. At the pleading stage, the defendant moved to dismiss or strike the "multi-state and national class claims" because the plaintiffs were unable to "satisfy Rule 23 class elements such as typicality and predominance." *Id.* at *3. The defendant claimed that "Illinois choice-of-law principles require the application of the law of the state in which the party resides or purchased the Complete Cookie, and applying conflicting laws of various states to plaintiffs' claims will be unmanageable on a multi-state or national basis." *Id.* The Court rejected the argument that the defendant's motion was premature, noting "'courts may strike class allegations at the pleading stage when they are facially and inherently deficient,' particularly when the dispute is not factual and discovery is unnecessary to resolve it." *Id.* at *4. Finding that "under Illinois choice of law, the laws of the states where each of the plaintiffs reside (whether they be named plaintiffs or class members) govern the claims alleged in the complaint," the Court agreed that "applying the warranty, unjust enrichment, and misrepresentation laws of fifty different states, or even the five states that comprise the multi-state class, is unmanageable on a class-wide basis because those states' laws conflict in material ways; that is, the 'essential requirements to establish a claim and the types of relief or remedies available' vary significantly." *Id.* The Court, therefore, struck "all claims pled on behalf of the multi-state and national classes." *Id.* at *5. *See also Miles v. American Hondo Motor Co., Inc.*, No. 17-C-4423, 2017 WL 4742193 at *5 (N.D. Ill. Oct. 19, 2017) ("This court has already determined that the law of the state where each plaintiff purchased his or her vehicle shall be applied to plaintiff's claims. Applying the warranty, unjust enrichment, and misrepresentation laws of 50 different states, or even the 4 states that the name plaintiffs represent, is unmanageable on a class-wide basis because those state laws may conflict in material ways. Because these claims must be adjudicated under the laws of so many jurisdictions, a single nationwide class is not manageable. Consequently, the court strikes the proposed nationwide

class.") (internal citation omitted).

Here, Plaintiff advances two counts on behalf of a nationwide class: Count III ("Violation of the Consumer Fraud and Deceptive Trade Practices Acts of the Various States and District of Columbia") and Count IV ("Unjust Enrichment"). As discussed above, however, these exact nationwide class allegations, asserting the same causes of action, have been stricken and/or dismissed at the pleading stage because it is readily-accepted that such a class would be unmanageable due to the differences in various states' laws. *See, e.g.*, *Kubilius*, 2019 WL 2861886 at *3 ("defendant identifies several additional fronts on which state laws vary, including the level of intent the plaintiff must establish; the availability of affirmative defenses such as bona fide error; the procedural requirements that must be satisfied prior to filing a claim; the circumstances in which a private right of action is available; and the limitations period governing such claims"); *In re: Fluidmaster, Inc., Water Connector Components Products Liability Litigation*, 2017 WL 1196990 at *37 ("All fifty-one jurisdictions' consumer protection laws differ significantly on procedural (length and accrual of the statute of limitations, statutory standing, and notice) and substantive (reliance, causation, state of mind, and remedies) dimensions"). In *In re: Fluidmaster, Inc., Water Connector Components Products Liability Litigation*, the defendant provided to this Court a fifty-one jurisdiction survey of consumer protection laws in connection with an opposition to a motion for class certification. *Id.* The Court ultimately denied class certification in that matter. *Id.* at *65. Defendants have updated the survey provided to the Court in that matter and have attached it hereto as Exhibit "A" in support of this instant motion. That survey demonstrates the variability among the various jurisdictions with respect to statute of limitations, standing, reliance and causation, notice, scienter, and remedies and damages. *See* Exhibit "A."

Importantly, there is no discovery Plaintiff could take which would alter these fundamental

23

differences in various states' laws which would change this conclusion. *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) ("The problem for the plaintiffs is that we cannot see how discovery or for that matter more time would have helped them. To this day, they do not explain what type of discovery or what type of factual development would alter the central defect in this class claim. The key reality remains: Their claims are governed by different States' laws, a largely legal determination, and no proffered or potential factual development offers any hope of altering that conclusion, one that generally will preclude class certification.").

Plaintiff's nationwide class allegations suffer from the same fundamental deficiencies as have been repeatedly acknowledged by Courts in this District. Accordingly, it is respectfully requested that this Court strike Plaintiff's nationwide class allegations either pursuant to Rule 12(f), 12(b)(6), or Rule 23.

## IV.     CONCLUSION

WHEREFORE, Defendants TGIF and Inventure respectfully request that this Court enter an Order dismissing Plaintiff's Complaint with prejudice and striking Plaintiff's nationwide class allegations.

Dated: April 16, 2021

*/s/ Christopher S. Hennessy*
Christopher S. Hennessy (06237293)
Cozen O'Connor
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
(312) 474-7900
chennessy@cozen.com
*Counsel for Defendants*

24