**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **AMY JOSEPH**, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**TGI FRIDAY'S, INC.**, and **INVENTURE FOODS, INC.**,<br><br>Defendants. | ) | No. 1:21-cv-01340<br><br>District Judge Robert M. Dow, Jr.<br>Magistrate Judge Young B. Kim<br><br>Jury Trial Demanded |

# AMENDED CLASS ACTION COMPLAINT

Plaintiff AMY JOSEPH ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through counsel at Zimmerman Law Offices, P.C., brings this Amended Class Action Complaint ("ACAC") against Defendants TGI FRIDAY'S, INC. and INVENTURE FOODS, INC. (collectively, "Defendants"), as follows:

## INTRODUCTION

1. Plaintiff brings this suit on behalf of herself and similarly situated individuals to stop Defendants from misrepresenting that their mozzarella sticks snack products contain mozzarella cheese, when, in fact, mozzarella cheese is not an ingredient in the product. In addition, Plaintiff, on behalf of herself and the proposed Class, seeks restitution and other equitable, injunctive, declaratory, and monetary relief for the price premium they paid for food products that were not as represented.

2. Pursuant to the Federal Food, Drug and Cosmetic Act ("Federal FDCA"), a food shall be considered "misbranded" if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a)(1).

3. Pursuant to the Illinois Food, Drug and Cosmetic Act ("Illinois FDCA"), a food is "misbranded" if "its labeling is false or misleading in any particular." 410 ILCS 620/11(a).

4. Defendants manufacture, market, distribute, and sell the mozzarella sticks products. By misrepresenting the key ingredients in their products, Defendants engaged, and still engage in, business practices that are unlawful, unfair, and deceptive because consumers reasonably rely on Defendants' material misrepresentations to their detriment.

## PARTIES

5. Plaintiff AMY JOSEPH is a natural person and resident and citizen of Illinois.

6. Defendant TGI FRIDAY'S, INC. ("TGI") is a New York corporation with its principal place of business in Texas.

7. Defendant INVENTURE FOODS, INC. ("Inventure") is a Delaware corporation with its principal place of business in Arizona.

## JURISDICTION AND VENUE

8. This Court has personal jurisdiction over Defendants pursuant to 735 ILCS 5/2-209(a)(1) (transaction of any business within this State), section 2-209(a)(7) (the making or performance of any contract or promise substantially connected with this State), section 2-209(b)(4) (corporation doing business within this State), and section 2-209(c) (any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States).

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions that give rise to Plaintiff's claim took place in this District.

## FACTUAL ALLEGATIONS

### *Consumer Expectations Regarding Products Containing Mozzarella Cheese*

10. Mozzarella cheese is lower in calories, sodium, fat, saturated fat, and cholesterol than most other cheeses, including cheddar cheese.

11. Mozzarella cheese also contains bacteria that act as probiotics, including strains of *Lactobacillus casei* and *Lactobacillus fermentum*.[1,2,3] Both animal and human studies show that these probiotics may improve gut health, promote immunity, and fight inflammation in the body.[4,5,6,7] One study of adults found *Lactobacillus fermentum* significantly reduced the duration of respiratory infections.[8] Thus, mozzarella cheese may strengthen a person's immune system and help fight infections.

---

[1] Jeronymo-Ceneviva AB, de Paula AT, Silva LF, Todorov SD, Franco BD, Penna AL. Probiotic properties of lactic acid bacteria isolated from water-buffalo mozzarella cheese. Probiotics Antimicrob Proteins. 2014 Dec;6(3-4):141-56.

[2] de Souza BMS, Borgonovi TF, Casarotti SN, Todorov SD, Penna ALB. Lactobacillus casei and Lactobacillus fermentum Strains Isolated from Mozzarella Cheese: Probiotic Potential, Safety, Acidifying Kinetic Parameters and Viability under Gastrointestinal Tract Conditions. Probiotics Antimicrob Proteins. 2019 Jun;11(2):382-396.

[3] Ortakci F, Broadbent JR, McManus WR, McMahon DJ. Survival of microencapsulated probiotic Lactobacillus paracasei LBC-1e during manufacture of Mozzarella cheese and simulated gastric digestion. J Dairy Sci. 2012 Nov;95(11):6274-81.

[4] Singh V, Singh R, Sharma P, Keshav P, Kumar A. Lactobacillus casei reduces the inflammatory joint damage associated with collagen-induced arthritis (CIA) by reducing the pro-inflammatory cytokines: Lactobacillus casei: COX-2 inhibitor. J Clin Immunol. 2011 Apr;31(2):147-54. doi: 10.1007/s10875-010-9457-7. Epub 2010 Sep 14.

[5] Pyne DB, Cripps AW, Hopkins WG, Eskesen DC, Jairath A, Christophersen CT, Conlon MA, Fricker PA. Lactobacillus fermentum (PCC®) supplementation and gastrointestinal and respiratory-tract illness symptoms: a randomised control trial in athletes. Nutr J. 2011 Apr 11;10:30.

[6] Cox AJ, Pyne DB, Saunders PU, Fricker PA. Oral administration of the probiotic Lactobacillus fermentum VRI-003 and mucosal immunity in endurance athletes. Br J Sports Med. 2010 Mar;44(4):222-6.

[7] D Merenstein, M Murphy, A Fokar, R K Hernandez, H Park, H Nsouli, M E Sanders, B A Davis, V Niborski, F Tondu, and N M Shara. Use of a fermented dairy probiotic drink containing *Lactobacillus casei* (DN-114 001) to decrease the rate of illness in kids: the DRINK study A patient-oriented, double-blind, cluster-randomized, placebo-controlled, clinical trial. Eur J Clin Nutr. 2010 Jul; 64(7): 669–677. Published online 2010 May 19.

[8] Guillemard E, Tondu F, Lacoin F, Schrezenmeir J. Consumption of a fermented dairy product containing the probiotic Lactobacillus casei DN-114001 reduces the duration of respiratory infections in the elderly in

12. Food products that are represented as containing mozzarella cheese command a premium in the marketplace. In addition, companies increase sales when they represent that a product contains mozzarella cheese.

13. Mozzarella sticks are a popular snack food. As made clear by their name, mozzarella cheese is *the* defining ingredient in mozzarella sticks. Indeed, a simple Google search for the term "mozzarella sticks" reveals dozens of recipes for mozzarella sticks that require the use of mozzarella cheese. As a prominent example, the Food Network's website contains a mozzarella stick recipe from celebrity chef Giada De Laurentiis which calls for the use of mozzarella cheese (and *only* mozzarella cheese).[9]

14. In other words, the term "mozzarella sticks"—as it is commonly used in modern society—refers to a food that features mozzarella cheese as its primary ingredient.

***Food Labeling Requirements***

15. State and federal law prohibit false misrepresentations in connection with selling food. At the federal level, the United States Food and Drug Administration ("FDA") has promulgated hundreds of regulations regarding food labeling, pursuant to its authority under the Federal FDCA—codified at 21 U.S.C. §§ 301, *et seq*. State laws regarding food labeling largely mirror and adopt the statutory requirements of the Federal FDCA, as well as the regulations promulgated pursuant thereto by the FDA. In Illinois, these standards are set forth in the Illinois FDCA—codified at 410 ILCS 620/1, *et seq*.—and the regulations promulgated pursuant thereto.[10]

---

a randomised controlled trial. Br J Nutr. 2010 Jan;103(1):58-68.

[9] The Food Network, *Mozzarella Sticks*, available at: https://www.foodnetwork.com/recipes/giada-de-laurentiis/mozzarella-sticks-recipe-1953577.

[10] Since federal law is largely duplicative of state law relative to the food labeling standards discussed below, Plaintiff will refer to the Federal FDCA and the Illinois FDCA, collectively, as the "FDCA," unless otherwise noted.

16. Pursuant to the regulations promulgated under the FDCA, "the principal display panel of a food in package form shall bear as one of its principal features a statement of the identity of the commodity." 21 C.F.R. § 101.3(a). Unless otherwise provided for by law, "such statement of identity" must be "the common or usual name of the food." 21 C.F.R. § 101.3(b).

17. In general, "the common or usual name of a food" is one that "accurately identif[ies] or describe[s], in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a). "A common or usual name of a food may be established by common usage or by" law. 21 C.F.R. § 102.5(d).

18. In addition, where "the common or usual name of a food" may "create an erroneous impression that [a certain] ingredient(s) or component(s) is present in an amount greater than is actually the case," or where it may mislead consumers "about the presence or absence of the ingredient(s) or component(s) in the food," a product label must disclose the presence (and/or the percentage thereof) or absence of such an ingredient or component in the food. 21 C.F.R. § 102.5(b)–(c).

19. The FDA's regulations further state that a food's "common or usual name" must "be uniform among all identical or similar products and may not be confusingly similar to the name of any other food that is not reasonably encompassed within the same name." 21 C.F.R. § 102.5(a).

20. Similarly, if a food is "an imitation of another food"—*i.e.*, it "is a substitute for and resembles another food," but cannot be labeled using the common or usual name of the food being imitated without running afoul of the provisions of 21 C.F.R. § 102.5 (discussed above)—its label must contain, "in type of uniform size and prominence, the word 'imitation' and, immediately thereafter, the name of the food imitated." 21 C.F.R. § 101.3(e).

### ***Defendants' Mozzarella Sticks***

21. Defendant TGI is the franchisor of the popular restaurant chain known as "TGI Fridays." According to TGI's website, there are 335 TGI Fridays restaurants located in 33 different states.[11]

22. TGI Fridays restaurants are particularly well-known for their appetizers (including mozzarella sticks), and their $10 "Endless Apps" promotion.

23. Capitalizing on the association between TGI Fridays and appetizers, TGI, in concert with Inventure, sells a variety of shelf-stable products based on the appetizers sold at TGI Fridays restaurants. These products are sold in "brick and mortar" stores (*e.g.*, grocery stores, convenience stores, etc.) and online.

24. One of those products is known as TGI Fridays Mozzarella Sticks Snacks (the "Products"). Defendants, individually and acting jointly, collectively, and in concert together, distribute, advertise, market, and sell the Products.

25. Defendants, individually and acting jointly, collectively, and in concert together, direct, control, and participate in the manufacturing and packaging of the Products. As part of that direction, control, and participation, Defendants, individually and acting jointly, collectively, and in concert together, determined and are responsible for the ingredients contained in each package of the Products.

26. Defendants, individually and acting jointly, collectively, and in concert together, know and are responsible for the ingredients in each package of the Products.

27. Defendants, individually and acting jointly, collectively, and in concert together, created, developed, reviewed, authorized, and are responsible for the textual and graphic content

---

[11] TGI Friday's, *Find Your Fridays*, available at: https://locations.tgifridays.com.

on the packaging of the Products, including the representations contained therein. This is supported by the fact that (1) the textual and graphic content on packaging of the Products is copyrighted by TGI and is being used under license by Inventure, (2) "TGI Friday's" is a registered trademark of TGI and is being used under license by Inventure, and (3) the Products are distributed by Inventure.

28. Each package of the Products contains standardized labeling created, developed, reviewed, and authorized by Defendants, individually and acting jointly, collectively, and in concert together. The packaging of all Products is the same or substantially similar.

29. Defendants, individually and acting jointly, collectively, and in concert together, know, created, developed, reviewed and are responsible for the representations contained on each package of the Products.

30. The front of each package of the Products prominently displays the words "MOZZARELLA STICKS." A representative depiction of the label appears below:



31. As noted above, the term "mozzarella sticks"—as it is commonly and customarily used—refers to a food that features mozzarella cheese as the primary ingredient.

32. Moreover, given the association between TGI Fridays and appetizers—and, more specifically, TGI Fridays and the mozzarella sticks sold at TGI Fridays restaurants—the prominent placement of TGI's logo on the Products causes consumers to associate the Products with the dish offered on TGI's menu at its restaurants. As a result, the labels on the Products lead consumers to reasonably believe that the Products, like the mozzarella sticks sold at TGI Fridays restaurants, contain real mozzarella cheese.

33. Based upon the foregoing, a reasonable consumer would understand the packaging of the Products as representing that the Products contain mozzarella cheese. *E.g.*, *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477 (7th Cir. 2020) ("Deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used" from the perspective of a "reasonable consumer" and "in touch with real consumer behavior.").

34. Contrary to Defendants' representation that the Products contain mozzarella cheese, the Products do not contain *any* mozzarella cheese. Instead, the Products contain cheddar cheese.

35. In addition to defying the commonsense proposition that a food called "mozzarella sticks" would contain mozzarella cheese, the Products' labeling runs afoul of several of the FDA's regulations, including those described below.

36. First, given its common and ordinary usage, the term "mozzarella sticks" is the "common or usual name of" a breaded snack food containing *mozzarella* cheese. 21 C.F.R. § 102.5(d). Indeed, the term "mozzarella sticks" "accurately identif[ies] or describe[s], in as simple

and direct terms as possible, the basic nature of the food [and] its characterizing…ingredient[,]" and is *uniformly* used to describe "all identical or similar products." 21 C.F.R. § 102.5(a).

37. Because a snack food that contains cheddar cheese is not "reasonably encompassed within" the commonly understood definition of what constitutes "mozzarella," using the term "mozzarella sticks" to describe the Products is "confusingly similar to the name of [another] food," in violation of the FDA's regulations. 21 C.F.R. § 102.5(a).

38. Second, since the "common or usual name of" a breaded snack food containing *mozzarella* cheese is "mozzarella sticks," the use of the term "mozzarella sticks" to describe a product that does not, in fact, contain mozzarella cheese—such as the Products—certainly misleads consumers "about the presence or absence of the ingredient(s) or component(s) in the food." 21 C.F.R. § 102.5(c). As such, the front label of the Products was required to conspicuously disclose the absence of mozzarella cheese in the food. 21 C.F.R. § 102.5(c).

39. However, the Products' front label denies the absence of mozzarella cheese in the Products, in violation of 21 C.F.R. § 102.5(c).

40. Finally, since the Products are "a substitute for and resemble[]" the food product that is commonly referred to as "mozzarella sticks," but cannot accurately be labeled as "mozzarella sticks" due to their lack of mozzarella cheese (21 C.F.R. § 102.5), the Products fall within the definition of an "imitation" of mozzarella sticks. 21 C.F.R. § 101.3(e). As such, the Products' label is false and misleading because it is required to bear the word "imitation" immediately preceding the words "MOZZARELLA STICKS."

41. The Products' label, however, contains no mention of the fact that they are "imitation" mozzarella sticks.

42. In light of the foregoing, the Products' labeling is false and misleading, and the Products are misbranded under state and federal law. *See* 21 U.S.C. § 343(a)(1); 410 ILCS 620/11(a).

43. Defendants, individually and acting jointly, collectively, and in concert together, willfully misrepresented that their Products contain mozzarella cheese knowing that consumers, including Plaintiff and Class members, would reasonably rely on Defendants' representations on the labels of the Products, including the name of this product, to inform them of whether the product contains mozzarella cheese.

44. The absence of the premium ingredient mozzarella cheese in the Products has a material bearing on consumers' decision to buy them. Indeed, at least within the context of the food known as "mozzarella sticks," the presence of mozzarella cheese is more desirable to consumers than other cheeses (such as cheddar cheese).

45. Prior to purchasing the Products, Plaintiff and members of the Class were exposed to, saw, read, and understood Defendants' misrepresentations and omissions regarding the ingredients in the Products, including the representation that the Products contained mozzarella cheese. Those representations were made on the front label of each package of the Products.

46. Consumers reasonably rely on Defendants' representations that the Products contain mozzarella cheese, including the representation in the name of this product that indicates that the product contains mozzarella cheese.

47. Defendants, individually and acting jointly, collectively, and in concert together, intended that Plaintiff and members of the Class rely on the standardized representations contained on the packages of the Products, including the representation that the Products contained mozzarella cheese.

48. In reliance on Defendants' misrepresentations and omissions that the Products contained mozzarella cheese, Plaintiff and members of the Class reasonably believed that the Products contained mozzarella cheese.

49. Based on their reasonable belief that the Products contained mozzarella cheese, Plaintiff and members of the Class were willing to purchase the Products. Indeed, as noted above, the term "mozzarella sticks"—as it is commonly and customarily used—refers to a food that features mozzarella cheese as the primary ingredient. Therefore, acting as reasonable consumers, Plaintiff and members of the Class had no reason to question what type of cheese was in the Products, and were unaware that the Products did not contain mozzarella cheese when they purchased the Products. *E.g.*, *Bell*, 982 F.3d at 477 ("The reasonable consumer standard does not presume, at least as a matter of law, that reasonable consumers will test prominent front-label claims by examining the fine print on the back label."); *Dumont v. Reily Foods Co.*, 934 F.3d 35, 40-41 (1st Cir. 2019) (a reasonable consumer could interpret the words "hazelnut crème" on coffee packaging to represent that the product contained actual hazelnuts, even though hazelnuts were not included in ingredient list).

50. As a result of these reasonable beliefs, Plaintiff and members of the Class purchased the Products.

51. Had Plaintiff and Class members known the truth—*i.e.*, that the Products do not contain any mozzarella cheese—they would not have been willing to purchase them at all. Indeed, mozzarella cheese is *the* defining ingredient in mozzarella sticks, such that the substitution of another type of cheese in place of mozzarella cheese renders the Products an entirely different product from the one that Plaintiff and Class members were willing to purchase. Therefore, as a direct and proximate result of Defendants' misrepresentations and omissions concerning the

Products—*e.g.*, that the Products contained mozzarella cheese, when, in fact, they contained cheddar cheese—Plaintiff and Class members purchased the Products.

52. Plaintiff and Class members were harmed in the form of the money they paid for the Products which they would not otherwise have paid had they known the truth. As set forth below, these damages are equal to the *entire* purchase price that Plaintiff and Class members paid for the Products.

53. Simply put, Plaintiff and Class members wanted to purchase *mozzarella* sticks, and not "cheddar sticks" or "imitation mozzarella sticks." Had Plaintiff and Class members known that the Products were "cheddar sticks" or "imitation mozzarella sticks," they would not have purchased them because they wanted *mozzarella* sticks.

54. In other words, this case does *not* involve a product that Plaintiff and Class members wanted, and still would have purchased (albeit at a lower price), even if they knew the truth; rather, this case involves a Product that Plaintiff and Class members did not want, and would not have purchased at all, had they known the truth.

55. In fact, mozzarella cheese and cheddar cheese are two *different* products, as a matter of law. 21 C.F.R. § 133.113 (describing cheddar cheese); 21 C.F.R. § 133.155 (describing mozzarella cheese). Accordingly, in the same was that a car is worthless as boat (and vice versa), a product that contains cheddar cheese is worthless as a product that contains mozzarella cheese (and vice versa).

56. For this reason, the presence of mozzarella cheese was the *essential* term of the bargain between Defendant and Plaintiff/Class members, as mozzarella cheese is what makes mozzarella sticks, mozzarella sticks. This is in contrast to non-essential characteristics of products—such as the amount of "slack-fill" in a box, the purported prices of competitors' similar

products, or the precise quantities of certain ingredients within a given product—that may affect the value of a given product, but, in the end, do not change the essential nature of the product itself.

57. As such, Defendants' deception *induced* Plaintiff and Class members into making purchases that they would never have made in the first place, had they known the truth about the Products, and resulted in Plaintiff and Class members receiving *nothing* that they bargained for. Indeed, "a prerequisite for 'benefit of the bargain' damages is the existence of a bargain" (*See, e.g.*, *Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp.*, 339 F. Supp. 2d 1051, 1056 (N.D. Ill. 2004)), but here "the parties d[id] not share a common understanding of the essential terms of" their purported bargain, such that no bargain was made. (*See, e.g.*, *Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873, 881 (N.D. Ill. 2020)).

58. For similar reasons, even if Plaintiff and Class members did make a bargain with Defendants, their damages are different from those present in cases involving misrepresentations regarding the amount of "slack-fill" in a box, the purported prices of competitors' similar products, or the precise quantities of certain ingredients within a given product, because, in those cases, consumers still received *some* (or all) of what they intended to purchase, but allegedly overpaid for what they received.

59. Here, however—unlike in cases involving deception regarding non-essential characteristics of a given product—Plaintiff and Class members received no benefit from any bargain with Defendants because they received *none* of the Product that they bargained for.

60. Put slightly differently, prior to their purchase of the Products, Plaintiff and Class members did not have a product that contained mozzarella cheese. Plaintiff and Class members wanted a product that contained mozzarella cheese, and as a result of Defendants' misrepresentations and omissions, purchased the Products under the belief that the Products

contained mozzarella cheese. But, even after they received the Products, Plaintiff and Class members *still* did not have a product that contained mozzarella cheese.

61. Therefore, although Plaintiff and Class members received *something* in connection with their purchases—*i.e.*, a product that contained cheddar cheese—the Products that they purchased were worthless to them because they wanted mozzarella cheese, but, instead, received cheddar cheese.

62. Alternatively, assuming that Plaintiff and Class members received some benefit from their purported "bargain," they were still harmed because the Product they received was worth less than the one they believed that they were purchasing.

63. For example, a 6-pack of 2.25 ounce bags (*i.e.*, 13.5 total ounces) of the Product sells on Amazon.com for approximately $22.89,[12] or $1.70 per ounce.

64. There are a variety of other products comparable in ingredients to the Products, including (1) Cheetos Puffs Cheese Flavored Snacks ("Regular Cheetos Puffs"), (2) Simply Cheetos Puffs White Cheddar Cheese Flavored Snacks ("White Cheddar Cheetos Puffs"), (3) Cheetos Baked Crunchy Cheese Flavored Snacks ("Baked Cheetos"), and (4) Pirate's Booty white Cheddar Cheese Puffs ("Pirate's Booty") (collectively, the "Comparator Products").

65. The Comparator Products are all made from substantially similar ingredients to the Product, including cornmeal and cheddar cheese.

[12] This approximate price was calculated as follows: (1) as of the filing of this ACAC, one listing on Amazon.com for a 6-pack of 2.25 ounce bags of the Product reflected a price of $25.18, (2) another listing on Amazon.com, as of the filing of the ACAC, reflected a price of $20.55 for a 6-pack of 2.25 ounce bags of the Product, and (3) Plaintiff paid $22.95 for a 6-pack of 2.25 ounce bags of the Product. The average of all three of these prices is $22.89.

66. The Comparator Products are also similar to the Products because the Comparator Products are all brand name products (as opposed to "generic," private label products), and therefore share similar brand name recognition to the TGI Fridays brand name.

67. In addition to these generally applicable similarities between the Products and the Comparator Products, each of the Comparator Products has other similarities to the Products, as described below:

a. Regular Cheetos Puffs, White Cheddar Cheetos Puffs, and Pirate's Booty are also comparable to the Products because they have a similar texture (*i.e.*, they are all "puffy");

b. Baked Cheetos and Pirate's Booty are also comparable to the Products because both products are baked instead of fried;

c. White Cheddar Cheetos Puffs and Pirate's Booty are also comparable to the Products because they contain white cheddar cheese, which, like mozzarella cheese, is viewed by consumers as a premium ingredient and differentiates the flavor of these Comparator Products from the more common "regular" cheddar cheese flavor featured by most similar products;

d. Pirate's Booty is also comparable to the Products because Pirate's Booty is viewed by consumers as a premium product, in part because they are not Cheetos brand cheese puffs, which is the most common and ubiquitous brand of cheese puffs.

68. On Amazon.com and Walmart's website, Regular Cheetos Puffs sell for approximately $0.31 per ounce, on average. Specifically, a 40-pack of 0.875 ounce bags (*i.e.*, 35 total ounces) of Regular Cheetos Puffs sells on Amazon.com for approximately $11.98, or $0.34 per ounce. Single bags of Regular Cheetos Puffs, in 8 ounce and 13.5 ounce quantities, sell on Walmart's website for approximately $2.50 (*i.e.*, $0.31 per ounce) and $3.98 (*i.e.*, $0.29 per ounce), respectively.

69. On Amazon.com and Walmart's website, White Cheddar Cheetos Puffs sell for approximately $0.54 per ounce, on average. Specifically, a 40-pack of 0.875 ounce bags (*i.e.*, 35 total ounces) of White Cheddar Cheetos Puffs sells on Walmart's website for approximately

$20.94, or $0.60 per ounce. A single 8 ounce bag of White Cheddar Cheetos Puffs sells on Amazon.com for approximately $3.79, or $0.47 per ounce.

70. A 40-pack of 0.875 ounce bags (*i.e.*, 35 total ounces) of Baked Cheetos sells on Amazon.com for approximately $13.67, or $0.39 per ounce.

71. On Amazon.com, Pirate's Booty sells for approximately $0.64 per ounce, on average. Specifically, a 24-pack of 0.5 ounce bags (*i.e.*, 12 total ounces) of Pirate's Booty sells on Amazon.com for approximately $7.98, or $0.67 per ounce, and a 12-pack of 4 ounce bags (*i.e.*, 48 total ounces) of Pirate's Booty sells on Amazon.com for approximately $30.73, or $0.64 per ounce. A single 10 ounce bag of Pirate's Booty sells on Amazon.com for approximately $5.99, or $0.60 per ounce.

72. Given their ubiquity and familiarity to consumers, and other similarities to the Products, Regular Cheetos Puffs—of all the Comparator Products—are the most representative of a "baseline" or "control" product against which other similar products can be compared.

73. As demonstrated by the fact that Baked Cheetos, on average, sell for $0.08 per ounce more than Regular Cheetos Puffs, consumers are willing to pay a premium for a baked (as opposed to fried) cheese puff product. For purposes of the discussion below, the premium that consumers are willing to pay for a baked (as opposed to fried) cheese puff product will be assumed to be $0.08 per ounce.

74. As demonstrated by the fact that White Cheddar Cheetos Puffs, on average, sell for approximately $0.23 per ounce more than Regular Cheetos Puffs, the use of white cheddar cheese—as opposed to "regular," yellow cheddar cheese—commands a premium from consumers. For purposes of the discussion below, the premium that consumers are willing to pay for a "superior" white cheddar cheese flavor will be assumed to be $0.23 per ounce.

75. Based on the foregoing, a baked (as opposed to fried) cheese puff product that contains a white cheddar cheese flavor commands a premium of $0.31 per ounce (*i.e.*, $0.08 per ounce plus $0.23 per ounce). Pirate's Booty features both of these characteristics, and—because it is not a Cheetos brand cheese puff product—is viewed by consumers as a premium product to the other Comparator Products.

76. As noted above, Pirate's Booty, on average, sells for approximately $0.33 per ounce more than Regular Cheetos Puffs. Since $0.31 of this $0.33 per ounce premium is accounted for by the fact that Pirate's Booty is a baked (as opposed to fried) cheese puff product that contains a white cheddar cheese flavor, the premium that consumers are willing to pay for a "superior" (*i.e.*, non-Cheetos) cheese puff product is approximately $0.02 per ounce.

77. In total, consumers are willing to pay approximately $0.33 per ounce for a cheese puff product that (1) is baked (as opposed to fried), (2) has a "superior" white cheddar cheese flavor, and (3) is a "premium" brand of cheese puff product. However, that premium is significantly less than the premium that Plaintiff and Class members paid for the Products, and therefore these characteristics cannot explain the price difference between the Products and the Comparator Products.

78. The only remaining characteristic that the Products purportedly have, and the Comparator Products do *not* have, is the inclusion of mozzarella cheese. As such, the purported presence of mozzarella cheese is the only potential variable that can explain the difference in price between the Products and the Comparator Products.

79. Since the Products do *not* contain mozzarella cheese, Plaintiff and Class members paid a premium for something they did not receive.

80. Had Plaintiff and Class members known that the Products do *not* contain mozzarella cheese, they, at the very least, would not have paid the premium associated with the purported presence of mozzarella cheese.

81. Therefore, as a result of Defendants' misrepresentations and omissions regarding the presence of mozzarella cheese in the Products, Plaintiff and Class members were deceived into paying a premium for the Products that they otherwise would not have paid (if they would have even purchased the Products at all).

***Facts Relevant to Plaintiff***

82. In January 2021, Plaintiff purchased a 6-pack of 2.25 ounce bags (*i.e.*, 13.5 total ounces) of the Products on Amazon.com for $22.95.

83. Prior to purchasing the Products, Plaintiff saw, read, and understood the information contained on the front label of the package of the Products, including the representation in the name of the product. On that front label, Defendants, individually and acting jointly, collectively, and in concert together, represented that the Products contain mozzarella cheese. The remainder of the Products' packaging was not visible on Amazon.com, and Plaintiff had never seen the back label of the package prior to this purchase of the Products.

84. The front label of the Products' packaging was the only place where the Products' purported ingredients were listed on Amazon.com when Plaintiff purchased the Products. Indeed, neither Amazon.com's "product description" or "product details" section listed any ingredient information for the Products.

85. As such, based on the information that was provided to her, Plaintiff believed that the Products contained mozzarella cheese.

86. Moreover, even if ingredient information was available to Plaintiff when she purchased the Products (which it was not), Plaintiff, acting as a reasonable consumer, had no reason to question what type of cheese was in the Products, given the prominence of the words "MOZZARELLA STICKS" on the Product's front label, and her reasonable understanding that mozzarella sticks, by definition, contain mozzarella cheese. *E.g.*, *Bell*, 982 F.3d at 477 ("The reasonable consumer standard does not presume, at least as a matter of law, that reasonable consumers will test prominent front-label claims by examining the fine print on the back label.").

87. Therefore, even based on the information that *could* have been provided to her (even though it was not), Plaintiff reasonably believed that the Products contained mozzarella cheese.

88. Plaintiff's belief that the Products contained mozzarella cheese was formed in reasonable reliance on Defendants' misrepresentations and omissions that the Products contain mozzarella cheese.

89. Plaintiff was only willing to buy the Products that she purchased because she believed that they contained mozzarella cheese.

90. Based on her belief that the Products contained mozzarella cheese, Plaintiff purchased the Products.

91. After purchasing the Products, Plaintiff discovered that the Products that she purchased contained cheddar cheese, contrary to Defendants' misrepresentations and omissions.

92. Specifically, upon opening one of the bags and eating the Products that she purchased, Plaintiff noticed that the Products tasted like cheddar cheese and not mozzarella cheese.

93. Since Plaintiff's decision to purchase the Products was based on her belief that they were *mozzarella* sticks—which, by definition, contain mozzarella cheese—the Products that

Plaintiff purchased were rendered worthless to her. As explained above, Plaintiff wanted mozzarella cheese, and *not* cheddar cheese, and therefore, the Products that Plaintiff purchased were entirely different from the Products that she believed that she was purchasing. In other words, Plaintiff received *none* of what she bargained for.

94. Alternatively, to the extent that Plaintiff received *some* benefit of her purported bargain with Defendants, Plaintiff was still harmed because the Products that she purchased were less valuable that what she believed, based on Defendants' misrepresentations and omissions.

95. Had Plaintiff known that the Products she purchased contained cheddar cheese instead of mozzarella cheese, she would not have purchased the Products, or, at the very least, would have paid less for them.

96. Therefore, as a direct and proximate result of Defendants' misrepresentations and omissions—*i.e.*, that the Products contained mozzarella cheese—Plaintiff was harmed in the form of the money she paid for Products that she would not otherwise have paid had she known the truth.

97. Plaintiff brings this action on behalf of herself, and a Class of similar situated individuals, seeking recovery of the damages they incurred as a result of Defendants' deception.

## CLASS ALLEGATIONS

98. **Class Definition**: Plaintiff brings this action pursuant Fed. R. Civ. P. 23, on behalf of a nationwide class of similarly situated individuals and entities ("the Class"), defined as follows:

> All persons in the United States who purchased TGI Friday's Mozzarella Sticks Snacks.

Excluded from the Class are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter

finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

99. **Illinois Subclass Definition:** Plaintiff also brings this action pursuant to Fed. R. Civ. P. 23, on behalf of a subclass of similarly situated individuals and entities ("Illinois Subclass"), defined as follows:

> All persons in Illinois who purchased TGI Friday's Mozzarella Sticks Snacks.

Excluded from the Illinois Subclass are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Illinois Subclass; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

100. **Numerosity**: The Class and Illinois Subclass are each so numerous that joinder of individual members would be impracticable. While the exact number of Class members and Illinois Subclass members is presently unknown and can only be ascertained through discovery, Plaintiff believes that there are thousands of Class and Illinois Subclass members, if not more. This is based on that fact that, according to Dun & Bradstreet, Inventure has annual sales of more than $269 million and TGI has annual sales of more than $252 million.

101. **Commonality and Predominance**: There are several questions of law and fact common to the claims of the Plaintiff and members of the putative Class, which predominate over any individual issues, including:

a. Whether the Products contain mozzarella cheese;

b. Whether Defendants misrepresented to Plaintiff and Class members that the Products contain mozzarella cheese;

c. Whether Defendants omitted and concealed the fact that the Products contain cheddar cheese;

d. Whether the presence of mozzarella cheese in the Products was a material fact to Plaintiff and Class members;

e. The extent and amount of Plaintiff's and Class members' damages;

f. Whether Defendants' conduct violates the Federal FDCA;

g. Whether Defendants' conduct violates the Illinois FDCA;

h. Whether Defendants' conduct constitutes unfair or deceptive business practices under the Illinois Consumer Fraud and Deceptive Trade Practices Act;

i. Whether Defendants violated the Consumer Fraud and Deceptive Trade Practices Acts of the fifty states and the District of Columbia; and

j. Whether Defendants' conduct resulted in Defendants unjustly retaining a benefit to the detriment of Plaintiff and Class members, and violated the fundamental principles of justice, equity, and good conscience.

102. **Fair and Adequate Representation**: Plaintiff's claims are typical of the claims of the proposed Class. All claims are based on the same legal and factual issues, to wit: Defendants' misrepresentations and omissions concerning the Products. Plaintiff will fairly and adequately represent and protect the interests of the proposed Class, and Plaintiff does not have any interests antagonistic to those of the proposed Class. Plaintiff has retained competent counsel experienced in the prosecution of this type of litigation. The questions of law and fact common to the proposed Class members predominate over any questions affecting only individual Class members.

103. **Appropriate Method for Fair and Efficient Adjudication**: A class action can best secure the economies of time, effort and expense, and promote uniformity. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. Individual actions are not economically feasible and it is unlikely that individual members of the Class will prosecute separate actions. The trial and the litigation of Plaintiff's claims are manageable.

**COUNT I**
**(On Behalf of Plaintiff and the Illinois Subclass)**
**Violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act**
**(815 ILCS 505/1, *et seq.*)**

104. Plaintiff repeats and re-alleges the allegations of the paragraphs 1-103 with the same force and effect as though fully set forth herein.

105. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, provides protection to consumers by mandating fair competition in commercial markets for goods and services.

106. The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act". 815 ILCS 505/2.

107. The ICFA applies to Defendants' acts as described herein because it applies to transactions involving the sale of goods or services to consumers.

108. Defendants are each a "person," as defined by 815 ILCS 505/1(c).

109. Plaintiff and each member of the Illinois Subclass are "consumers," as defined by 815 ILCS 505/1(e), because they purchased the Products.

110. The Products are "merchandise," as defined by 815 ILCS 505/1(b).

111. Defendants, individually and acting jointly, collectively, and in concert together, made, and continue to make, false and fraudulent statements, and misrepresented, concealed, and omitted material facts, regarding the Products, including the misrepresentation that the Products contain mozzarella cheese.

112. Defendants' misrepresentations and omissions regarding the Products, and Defendants' concealment of the fact that the Products contain cheddar cheese, constitute deceptive and unfair acts or practices prohibited by the ICFA.

113. Defendants' aforementioned misrepresentations and omissions possess the tendency or capacity to mislead and create the likelihood of consumer confusion. *Unique Concepts, Inc. v. Manuel*, 669 F. Supp. 185, 191 (N.D. Ill. 1987).

114. Defendants' aforementioned misrepresentations and omissions were used or employed in the conduct of trade or commerce, namely, the marketing, sale, and distribution of the Products to Plaintiff and the Illinois Subclass.

115. Defendants' aforementioned misrepresentations and omissions are unfair business practices because they offend public policy and/or cause substantial injury to consumers. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417–18 (2002).

116. Defendants' aforementioned conduct is deceptive and unlawful because it violated section 343(a)(i) of the FDCA and section 620/11(a) of the Illinois FDCA, which were in full force and effect at all times relevant to this action.

117. For example, the Illinois FDCA prohibits "the manufacture, sale or delivery, holding or offering for sale any food, drug, device or cosmetic that is adulterated or misbranded." 410 ILCS 620/3.1. The Illinois FDCA also prohibits "misbranding of any food, drug, device or cosmetic." 410 ILCS 620/3.2. Finally, the Illinois FDCA prohibits "the dissemination of any false advertisement." 410 ILCS 620/3.5.

118. The Products' labeling is false or misleading, and the Products are misbranded pursuant to 410 ILCS 620/11(a), because the Products' label expressly and impliedly represents

that the Products contain mozzarella cheese when, in fact, they do not contain any mozzarella cheese.

119. Defendants violated the Illinois FDCA by misbranding the Products, by manufacturing and selling the Products that were misbranded, and by disseminating the Products labels that contained false advertisements.

120. Defendants' misbranding of the Products in violation of the Illinois FDCA violates public policy because Defendants made material misrepresentations to consumers with the intent that consumers, including Plaintiff and Illinois Subclass members, rely on those misrepresentations to their detriment.

121. The FDCA contains substantially similar prohibitions to the Illinois FDCA, and therefore, for the same reasons set forth above, Defendants violated the FDCA by misbranding the Products, by manufacturing and selling the Products that were misbranded, and by disseminating the Products labels that contained false advertisements.

122. Defendants intended that Plaintiff and Illinois Subclass members rely on the aforementioned false statements, misrepresentations, and omissions of material fact in purchasing the Products.

123. Plaintiff and Illinois Subclass members reasonably relied on Defendants' misrepresentations and omissions when they purchased the Products.

124. Acting as reasonable consumers, had Plaintiff and Illinois Subclass members been aware of the true facts regarding the Products and the complete lack of any mozzarella cheese therein, they would have declined to purchase the Products, or would not have paid as much money as they did.

125. Plaintiff and Illinois Subclass members suffered injuries in fact—*i.e.*, the loss of the money that they paid for the Products under the belief that the Products contained mozzarella cheese.

126. Acting as reasonable consumers, Plaintiff and Illinois Subclass members could not have avoided the injuries suffered by purchasing the Products because a reasonable consumer would believe that a product prominently labeled as being "mozzarella sticks" does, in fact, contain mozzarella cheese. *E.g.*, *Bell*, 982 F.3d at 477; *Dumont*, 934 F.3d at 40-41. In fact, like Plaintiff, many Illinois Subclass members likely purchased the Products on the Internet, and were unable to view anything but the Products' front label.

127. As a direct and proximate result of Defendants' unfair and deceptive acts or practices, Plaintiff and members of the Illinois Subclass suffered damages by purchasing the Products because they would not have purchased the Products had they known the truth, and they received a product that was worthless because it contains no mozzarella cheese.

**COUNT II**
**(On Behalf of Plaintiff and the Class)**
**Violation of the Consumer Fraud and Deceptive Trade Practices Acts of the Various States and District of Columbia**

128. Plaintiff repeats and re-alleges the allegations in Paragraphs 1-103 with the same force and effect as though fully set forth herein.

129. Plaintiff brings this Count individually, and on behalf of all similarly situated residents of each of the 50 states and the District of Columbia for violations of the respective statutory consumer protection laws, as follows:

a. the Alabama Deceptive Trade Practices Act, Ala.Code 1975, § 8–19–1, *et seq.*;

b. the Alaska Unfair Trade Practices and Consumer Protection Act, AS § 45.50.471, *et seq.*;

c. the Arizona Consumer Fraud Act, A.R.S §§ 44-1521, *et seq*.;

d. the Arkansas Deceptive Trade Practices Act, Ark.Code §§ 4-88-101, *et seq*.;

e. the California Unfair Competition Law, Bus. & Prof. Code §§17200, *et seq*. and 17500 *et seq*.;

f. the California Consumers Legal Remedies Act, Civil Code §1750, *et seq*.;

g. the Colorado Consumer Protection Act, C.R.S.A. §6-1-101, *et seq*.;

h. the Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110, *et seq*.;

i. the Delaware Consumer Fraud Act, 6 Del. C. § 2513, *et seq*.;

j. the D.C. Consumer Protection Procedures Act, DC Code § 28-3901, *et seq*.;

k. the Florida Deceptive and Unfair Trade Practices Act, FSA § 501.201, *et seq*.;

l. the Georgia Fair Business Practices Act, OCGA § 10-1-390, *et seq*.;

m. the Hawaii Unfair Competition Law, H.R.S. § 480-1, *et seq*.;

n. the Idaho Consumer Protection Act, I.C. § 48-601, *et seq*.;

o. the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1 *et seq*.;

p. the Indiana Deceptive Consumer Sales Act, IN ST § 24-5-0.5-2, *et seq*.;

q. The Iowa Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714H.1, *et seq*.;

r. the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq*.;

s. the Kentucky Consumer Protection Act, KRS 367.110, *et seq*.;

t. the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq*.;

u. the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, *et seq*.;

v. the Maryland Consumer Protection Act, MD Code, Commercial Law, § 13-301, *et seq*.;

w. the Massachusetts Regulation of Business Practices for Consumers Protection Act, M.G.L.A. 93A, *et seq*.;

x. the Michigan Consumer Protection Act, M.C.L.A. 445.901, *et seq*.;

y. the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq*.;

z. the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq*.;

aa. the Missouri Merchandising Practices Act, V.A.M.S. § 407, *et seq*.;

bb. the Montana Unfair Trade Practices and Consumer Protection Act of 1973, Mont. Code Ann. § 30-14-101, *et seq*.;

cc. the Nebraska Consumer Protection Act, Neb.Rev.St. §§ 59-1601, *et seq*.;

dd. the Nevada Deceptive Trade Practices Act, N.R.S. 41.600, *et seq*.;

ee. the New Hampshire Regulation of Business Practices for Consumer Protection, N.H.Rev.Stat. § 358-A:1, *et seq*.;

ff. the New Jersey Consumer Fraud Act, N.J.S.A. 56:8, *et seq*.;

gg. the New Mexico Unfair Practices Act, N.M.S.A. §§ 57-12-1, *et seq*.;

hh. the New York Consumer Protection from Deceptive Acts and Practices, N.Y. GBL (McKinney) § 349, *et seq*.;

ii. the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, *et seq*.;

jj. the North Dakota Consumer Fraud Act, N.D. Cent.Code Chapter 51-15, *et seq*.;

kk. the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq*.;

ll. the Oklahoma Consumer Protection Act, 15 O.S.2001, §§ 751, *et seq*.;

mm. the Oregon Unlawful Trade Practices Act, ORS 646.605, *et seq*.;

nn. the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq*.;

oo. the Rhode Island Deceptive Trade Practices Act, G.L.1956 § 6-13.1-5.2(B), *et seq*.;

pp. the South Carolina Unfair Trade Practices Act, SC Code 1976, §§ 39-5-10, *et seq*.;

qq. the South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1, *et seq*.;

rr. the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, *et seq*.;

ss. the Texas Deceptive Trade Practices-Consumer Protection Act, V.T.C.A., Bus. & C. § 17.41, *et seq*.;

tt. the Utah Consumer Sales Practices Act, UT ST § 13-11-1, *et seq*.;

uu. the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, *et seq*.;

vv. the Virginia Consumer Protection Act of 1977, VA ST § 59.1-196, *et seq*.;

ww. the Washington Consumer Protection Act, RCWA 19.86.010, *et seq*.;

xx. the West Virginia Consumer Credit And Protection Act, W.Va.Code § 46A-1-101, *et seq*.;

yy. the Wisconsin Deceptive Trade Practices Act, WIS.STAT. § 100.18, *et seq*.; and

zz. the Wyoming Consumer Protection Act, WY ST § 40-12-101, *et seq*.

130. The Products are consumer goods.

131. Defendants, individually and acting jointly, collectively, and in concert together, made, and continue to make, false and fraudulent statements, and misrepresented, omitted, and concealed material facts, regarding the Products, including the misrepresentation that the Products contain mozzarella cheese.

132. Defendants' misrepresentations and omissions regarding the Products, and Defendants' concealment of the fact that the Products contain cheddar cheese, constitute deceptive and unfair acts or practices in trade or commerce.

133. Defendants' aforementioned misrepresentations and omissions possess the tendency or capacity to mislead and create the likelihood of confusion.

134. Defendants' aforementioned misrepresentations and omissions were used or employed in the conduct of trade or commerce, namely, the marketing, sale, and distribution of the Products to Plaintiff and the Class.

135. Defendants' aforementioned misrepresentations and omissions are unfair business practices because they offend public policy and cause substantial injury to consumers.

136. Defendants' aforementioned conduct is deceptive and unlawful because it violated section 343(a)(i) of the FDCA and section 620/11(a) of the Illinois FDCA.

137. Defendants intended that Plaintiff and Class members rely on the aforementioned false statements, misrepresentations and omissions of material fact in purchasing the Products.

138. Plaintiff and Class members reasonably relied on Defendants' misrepresentations and omissions when they purchased the Products.

139. Acting as reasonable consumers, had Plaintiff and Class members been aware of the true facts regarding the Products and the complete lack of any mozzarella cheese therein, they would have declined to purchase the Products, or they would not have paid as much money as they did.

140. Plaintiff and Class members suffered injuries in fact—*i.e.*, the loss of the money that they paid for the Products under the belief that the Products contained mozzarella cheese.

141. Acting as reasonable consumers, Plaintiff and Class members could not have avoided the injuries suffered by purchasing the Products because a reasonable consumer would believe that a product prominently labeled as being "mozzarella sticks" does, in fact, contain mozzarella cheese. *E.g.*, *Bell*, 982 F.3d at 477; *Dumont*, 934 F.3d at 40-41. In fact, like Plaintiff, many Class members likely purchased the Products on the Internet, and were unable to view anything but the Products' front label.

142. As a direct and proximate result of Defendants' unfair and deceptive acts or practices, Plaintiff and members of the Class suffered damages by purchasing the Products because they would not have purchased the Products had they known the truth, and they received a product that was worthless because it contains no mozzarella cheese.

**COUNT III**
**(On Behalf of Plaintiff and the Class)**
**Unjust Enrichment**
**(In the Alternative to Counts I and II)**

143. Plaintiff repeats and re-alleges the allegations in Paragraphs 1-103 with the same force and effect as though fully set forth herein.

144. When a specific contract does not govern the relationship of the parties, and, therefore, no adequate remedy at law is applicable, an equitable remedy under a theory of unjust enrichment is available. *See, e.g., Guinn v. Hoskins Chevrolet*, 361 Ill.App.3d 575, 604 (1st Dist. 2005) (internal citations omitted).

145. Unjust enrichment "is a condition that may be brought about by unlawful or improper conduct as defined by law[.]" *See, e.g., Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 25 (quoting *Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill.App.3d 1017, 1024 (3rd Dist. 2009); *Alliance Acceptance Co. v. Yale Insurance Agency, Inc.*, 271 Ill.App.3d 483, 492 (1st Dist. 1995)).

146. To prevail on a claim of unjust enrichment, a plaintiff must prove: (1) "that the defendant has unjustly retained a benefit to the plaintiff's detriment," and (2) "that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *See, e.g., Cleary v. Philip Morris Inc.*, 656 F.3d 511, 518 (7th Cir.2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 160 (1989)).

147. Defendants, individually and acting jointly, collectively, and in concert together, made, and continue to make, false and fraudulent statements, and misrepresented, omitted, and concealed material facts, regarding the Products, including the misrepresentation that the Products contain mozzarella cheese.

148. Because Defendants are individually, jointly, and collectively responsible for, and acting jointly, collectively, and in concert together control, the manufacturing, marketing, distribution, and sale of the Products, Defendants knew that their misrepresentations and omissions regarding the Products were false.

149. Defendants knew that Plaintiff and Class members would rely on Defendants' misrepresentations and omissions concerning the Products. Defendants also knew that Plaintiff and Class members would only be willing to purchase the Products if they believed they contained mozzarella cheese.

150. Plaintiff and Class members reasonably relied on Defendants' misrepresentations and omissions when they purchased the Products.

151. Acting as reasonable consumers, Plaintiff and Class members could not have avoided the injuries suffered by purchasing the Products because a reasonable consumer would believe that a product prominently labeled as being "mozzarella sticks" does, in fact, contain mozzarella cheese. *E.g.*, *Bell*, 982 F.3d at 477; *Dumont*, 934 F.3d at 40-41. In fact, like Plaintiff, many Class members likely purchased the Products on the Internet, and were unable to view anything but the Products' front label.

152. Plaintiff and Class members conferred a benefit on Defendants—*i.e.*, the money that they paid for the Products under the belief that the Products contain mozzarella cheese.

153. Defendants acquired and retained money belonging to Plaintiff and the Class as a result of their wrongful conduct—*i.e.*, misrepresenting that the Products contain mozzarella cheese. Defendants profited at the expense of Plaintiff and Class members in connection with each individual sale of the Products because Plaintiff and Class members paid money for products that were worthless due to the fact that they do not contain any mozzarella cheese.

154. Acting as reasonable consumers, had Plaintiff and Class members been aware of the true facts regarding the Products and the complete lack of any mozzarella cheese therein, they would have declined to purchase the Products, or they would not have paid as much money as they did.

155. Defendants have unjustly received and retained a benefit at the expense of Plaintiff and the Class because Defendants unlawfully acquired their profits for worthless Products while appreciating and knowing that the Products do not contain any mozzarella cheese, contrary to their misrepresentations and omissions.

156. Defendants' retention of that benefit violates the fundamental principles of justice, equity, and good conscience because Defendants misled Plaintiff and the Class into falsely believing that the Products contain mozzarella cheese, in order to unjustly receive and retain a benefit.

157. Under the principles of equity, Defendants should not be allowed to keep the money belonging to Plaintiff and the members of the Class because Defendants have unjustly received it as a result of Defendants' unlawful actions described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff AMY JOSEPH, individually, and on behalf of the Classes, prays for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Classes defined herein;

B. Designating Plaintiff as representative of the Classes and her undersigned counsel as Class Counsel;

C. Entering judgment in favor of Plaintiff and the Class members and against Defendants;

D. Awarding Plaintiff and the Class members actual, punitive, enhanced, and statutory damages, as allowable under the law;

E. Ordering disgorgement of Defendants' ill-gotten gains and restitution of money inequitably obtained by Defendants and awarding those amounts to Plaintiff and the Class members;

F. Awarding Plaintiff and the Class members attorneys' fees and costs, including interest thereon, as allowed or required by law; and

G. Granting all such further and other relief as the Court deems just and appropriate.

**JURY DEMAND**

Plaintiff demands a trial by jury on all counts so triable.

Plaintiff AMY JOSEPH, individually, and on behalf of all others similarly situated,

By: s/ Thomas A. Zimmerman, Jr.

Thomas A. Zimmerman, Jr.
*tom@attorneyzim.com*
Sharon A. Harris
*sharon@attorneyzim.com*
Matthew C. De Re
*matt@attorneyzim.com*
Jeffrey D. Blake
*jeff@attorneyzim.com*
**ZIMMERMAN LAW OFFICES, P.C.**
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile

Counsel for Plaintiff and the putative Classes