IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMY JOSEPH, | ) | |
| | ) | |
| v. | ) | Case No. 21-cv-1340 |
| | ) | |
| TGI FRIDAY'S, INC., and INVENTURE | ) | Judge Robert M. Dow, Jr. |
| GOODS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Amy Joseph initiated this putative class action against Defendant TGI Friday's, Inc. ("TGIF") and Defendant Inventure Foods, Inc. ("Inventure") (collectively, "Defendants") on February 5, 2021 and later amended her complaint on May 7, 2021. [1, 18.] Plaintiff argues that the "TGI Fridays Mozzarella Stick Snacks" (the "Product") manufactured, marketed, distributed, and sold by Defendants were misbranded. Specifically, Plaintiff contends that the Product's label—which prominently states, "Mozzarella Stick Snacks" and includes an image of the hot appetizer, mozzarella sticks—is misleading because the Product does not contain actual mozzarella cheese. She asserts that Defendant's misleading representations and omissions give rise to several claims: (1) a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); (2) state-law claims for consumer fraud and deceptive trade practices in all fifty states and the District of Columbia; and (3) in the alternative, a claim for unjust enrichment.[1] Defendant removed the case under the Class Action Fairness Act under 28 U.S.C. § 1332(d)(2). Before the Court is Defendant's motion to dismiss [22] pursuant to

---

[1] Plaintiff originally pled an additional violation under the Illinois Food, Drug and Cosmetic Act. [1.] In response to Defendant's first motion to dismiss [16], Plaintiff amended her complaint without this claim. [18.]

Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons stated below, Defendant's motion [22] is denied in part and granted in part. Defendant TGIF is dismissed. The parties are directed to file a joint status report with an updated discovery plan by December 19, 2022.

## I. Background[2]

Plaintiff is a resident of Illinois. TGIF is incorporated in New York with its principal place of business in Texas. Inventure is incorporated in Delaware with its principal place of business in Arizona.

As alleged, TGIF is the franchisor of a popular restaurant chain known as "TGI Fridays[]" with 335 restaurants located in 33 states. [18, at ¶ 21.] According to Plaintiff, TGIF, "in concert with Inventure, sells a variety of shelf-stable products based on the appetizers sold at TGI Fridays restaurants." [*Id.*, at ¶ 22–23.] One of those products is known as "TGI Fridays Mozzarella Stick Snacks" ("Product"). [18, at ¶ 23–24.] The Product is sold to consumers in venues such as "'brick and mortar' stores (*e.g.*, grocery stores, convenience stores, etc.) and online" by internet vendors, such as Amazon.com. [*Id.*, at ¶ 23–24, 82.] The TGIF logo is copyrighted and licensed by TGIF to Inventure, which uses the logo on the Product's packing and distributes the Product to the identified venues.[3] [*Id.*, at ¶ 27; 27-1, at 2.]

---

[2] For purposes of Defendant's motion to dismiss [23], the Court accepts as true all well-pled allegations set forth in the complaint [18] and draws all reasonable inference in Plaintiff's favor. See *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

[3] These facts (*i.e.*, that TGIF licenses the TGIF logo to Inventure, which acts as a distributor) are established both in the complaint [28, at ¶ 27] and by the representations made by Defendants on the back of the Product's packaging [27-1, at 2].

As shown in the image below, the Product is sold in a bag with a front label that says, "Mozzarella Sticks Snacks" with an image of what appears to be mozzarella sticks in a bowl:



[*Id.*, at ¶ 30.] Despite its label, the Product does not contain mozzarella cheese; rather, it contains cheddar cheese. [*Id.*, at ¶ 34.]

Plaintiff alleges that in January of 2021, she purchased a six-pack of the Product on Amazon.com for $22.95. [*Id.*, at ¶ 82.] Plaintiff argues that because she only saw the Product's front label and Amazon.com did not provide a product description detailing the Product's ingredients, she believed mistakenly that the Product contained mozzarella cheese. [*Id.*, at ¶¶ 83–85.] Plaintiff claims that even if she had seen the back label, which stated that the Product did not contain mozzarella cheese, "given the prominence of the words 'MOZZARELLA STICKS' on the Product's front label, and her reasonable understanding that mozzarella sticks, by definition, contain mozzarella cheese," she reasonably believed that the Product contained

mozzarella cheese. [*Id.*, at ¶ 86.]

In the operative complaint, Plaintiff alleges three claims for relief: (1) Count I alleges violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILL. COMP. STAT. 505/1, *et seq.*, on behalf of herself, and the Illinois subclass; (2) Count II alleges violations of the respective state-law claims for consumer fraud and deceptive trade practices in all fifty states and the District of Columbia on behalf of herself and the nationwide class; and (3) in the alternative to Count I and II, Count III alleges a claim for unjust enrichment on behalf of Plaintiff and all class members. [*Id.*, at ¶¶ 143–57.] Plaintiff seeks restitution and other equitable, injunctive, declaratory, and monetary relief for the price premium she and others paid for the Product based on reasonable reliance that they contained mozzarella cheese.[4] [*Id.*, at ¶¶ 52, 56, 58, 61, 62–81.]

Plaintiff claims that she is entitled to relief because Defendants, "individually and acting jointly, collectively, and in concert together, created, developed, reviewed, authorized, and are responsible for the textual and graphic content on the packaging of the Products," including the misrepresentation that the Product contained mozzarella cheese. [*Id.*, at ¶¶ 1, 27.] Plaintiff further alleges that Defendants also individually and collectively distributed, advertised, marketed, and sold the Product; direct, controlled, and participated in manufacturing and packaging the Product; and knew and were responsible for the ingredients included in the

---

[4] Plaintiff's theory of damages is that a product with mozzarella cheese is more valuable to consumers and, therefore, worth more money, than a product with cheddar cheese. Plaintiff claims that the TGIF misrepresented that the Product included mozzarella cheese, which is an "essential characteristic" of the Product. [18, at ¶ 59.] Plaintiff alleges that because of this representation, Defendant could charge a higher price and it "induced Plaintiff and Class members" into purchasing it in reliance on this representation. [*Id.*, at ¶ 57.] This was the "bargain" that entitles Plaintiff and class members to recover loss benefit of the bargain damages. [*Id.*] Alternatively, Plaintiff claims that, even if she and class members received "some benefit from their purported bargain, they were still harmed because the Product they received was worth less than the one they believed they were purchasing." [*Id.*, at ¶ 62.] As support for this theory, Plaintiff compares other brand name (non-generic) snack products sold online ("Comparator Products") in terms of ingredients and price points. [*Id.*, at ¶¶ 64–65, 68–71.]

Product and the representation regarding those ingredients contained in each package. [*Id.*, at ¶¶ 24–28.] Plaintiff seeks to represent a nationwide class consisting of "[a]ll persons in the United States who purchased TGI Friday's Mozzarella Sticks Snacks" and an Illinois subclass consisting of "[a]ll persons in Illinois who purchased TGI Friday's Mozzarella Sticks Snacks." [*Id.*, at 20–21.]

## II. Motion to Dismiss

Defendants move to dismiss TGIF as a defendant and Counts I and III as failing to state claims. The Court will address each of Defendant's arguments in turn.

### A. Legal Standard for Motions to Dismiss

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558 (citation omitted). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the

Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, for plaintiff's allegations to survive a motion to dismiss, the complaint's well-pled facts must allow the Court "to infer more than the mere possibility of misconduct." *Ashcroft*, 556 U.S. at 679. Additionally, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (cleaned up) (quoting *Iqbal*, 556 U.S. at 678). Evaluating "whether a complaint states a plausible claim for relief" is a "context-specific task that requires the [Court] to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

Claims alleging fraud, including those asserted under the ICFA, are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), see *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018), which means that Plaintiff must "state with particularity the circumstances constituting fraud," FED. R. CIV. P. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011).

### B.  Motion to Dismiss Defendant TGIF

Defendants move to dismiss TGIF as a defendant based on two arguments: (1) that Plaintiff's use of group pleading fails to meet the requirements of Rules 8 and 9(b), and (2) that TGIF's role as a licensor fails to state a claim for misleading representations.

In regard to "group pleading," Defendants principally take issue with Plaintiff's allegations in the "Background" section of her complaint. [*Id.*, at ¶¶ 6–7.] In the "Background"

section of her complaint, Plaintiff alleges that "Defendants, individually and acting jointly, collectively, and in concert together" do the following tasks: (1) "distribute, advertise, market, and sell" the Product, (2) "direct, control, and participate in the manufacturing and packaging" of the Product, (3) "know and are responsible for the ingredients in each package of the Product[]," (4) "created, developed, reviewed, authorized, and are responsible for the textual and graphic content on the packaging of the Product[]," and (5) "know, created, developed, reviewed and are responsible for the representations contained on each package of the Product[]." [18, at ¶¶ 6–7.] Defendants argue that these allegations contrast with Plaintiff's admission that "the textual and graphic content on packaging of the Products is copyrighted by TGI and is being used under license by Inventure, (2) 'TGI Friday's' is a registered trademark of TGI and is being used under license by Inventure, and (3) the Products are distributed by Inventure." [18, at ¶ 27.]

When a pleading governed by Rule 9(b) concerns multiple defendants, the complaint should "inform each defendant of the specific * * * acts that constitute the basis of the action against the particular defendant." *Dachev v. Rich Am., Inc.*, 2019 WL 423192, at *13 (N.D. Ill. Feb. 4, 2019) (quoting *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994)); see also *Swiss Reinsurance Am. Corp. v. Access Gen. Agency, Inc.*, 571 F. Supp. 2d 882, 885 (N.D. Ill. 2008). Accordingly, the complaint should not "lump[]" multiple defendants together. *Vicom, Inc.*, 20 F.3d at 778. However, allegations against multiple defendants "adequately plead personal involvement where it is clear that they pertain to all of the defendants." *Robles v. City of Chicago*, 354 F. Supp. 3d 873, 875–76 (N.D. Ill. 2019); see also *Brooks*, 578 F.3d at 582 (7th Cir. 2009)) (noting that the plaintiff "adequately [pled] personal involvement, because he specifi[ed] that he [was] directing this allegation at all of the defendants").

The Court agrees with Plaintiff that the complaint adequately puts Defendants on notice of the unlawful acts that she alleges both committed. In *Dachev* and *Swiss Reinsurance*, the court held that the plaintiff improperly "lumped together" defendants in their complaints. See *Dachev*, 2019 WL 423192, at *13; *Swiss Reinsurance*, 571 F. Supp. 2d at 885. In both instances, the court dismissed the plaintiff's allegations on these grounds because in each complaint, the plaintiff failed to specify which acts they alleged that the defendants were responsible. *Dachev*, 2019 WL 423192, at *13 (dismissing the plaintiff's allegations because the plaintiff failed to "inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant"); *Swiss Reinsurance*, 571 F. Supp. 2d at 885 (dismissing the plaintiff's allegations because the complaint alleged that all defendants were all liable for three contract breaches, despite being nonparties to some of the contracts).

The complaint here does not suffer that deficiency. Plaintiff alleges that both Defendants had a wide variety of involvement in marketing, distributing, and selling the Product. [See generally 18.] She reiterates as much in her opposition brief. [See 26, at 6.] Defendants cannot point to a similar pleading where the Court found Plaintiff's chosen language wanting. [See 23.] Further, as Plaintiff points out [26, at 4], there is no "per se" rule against group pleading. See *Robles*, 354 F. Supp. 3d at 875 (citing *Lattimore v. Vill. of Streamwood*, No. 17 C 8683, 2018 WL 2183991, at *4 (N.D. Ill. May 11, 2018)) (noting that "group pleading' does not violate Rule 8 so long as the complaint provides sufficient detail to put the defendants on notice of the claims"). As Defendants do not suffer any apparent confusion over Plaintiff's allegations, the Court declines to dismiss Plaintiff's allegations against Defendants for improper "lumping together."

Defendants further argue that even if Plaintiff's pleadings are adequate, she still fails to

8

state a claim against TGIF, which she identifies as a licensor. [23, at 7–9.] Defendants point to one section in the complaint, which alleges:

> Defendants, individually and acting jointly, collectively, and in concert together, created, developed, reviewed, authorized, and are responsible for the textual and graphic content on the packaging of the Products, including the representations contained therein. This is supported by the fact that (1) the textual and graphic content on packaging of the Products is copyrighted by TGI and is being used under license by Inventure, (2) "TGI Friday's" is a registered trademark of TGI and is being used under license by Inventure, and (3) the Products are distributed by Inventure.

[18, at 27.] From this, Defendants argue that "TGIF's participation in the one role Plaintiff actually ascribes to it–a mere trademark licensor–does not render it liable for the alleged improper acts of the product's manufacturer."[5] [23, at 8.]

The Court agrees. While Plaintiff's group pleading sufficiently put Defendants on notice of her allegations, TGIF is not liable as a licensor, as alleged. As Defendants note [23, at 8–9; 27, at 4–6], other courts have granted motions to dismiss in similar circumstances. See generally *Troncoso v. TGI Friday's Inc.*, 2020 WL 3051020 (S.D.N.Y. June 8, 2020); *Hilsley v. Gen. Mills, Inc.*, 376 F. Supp. 3d 1043 (S.D. Cal. 2019); *Parent v. Millercoors LLC*, 2016 WL 3348818 (S.D. Cal. June 16, 2016). In a similar suit against TGIF and Inventure, a court dismissed TGIF as a defendant because the plaintiff's allegations against TGIF as a licensor were insufficient to state a claim for misleading representations. *Troncoso*, 2020 WL 3051020, at *11. As here, the plaintiff in *Troncoso* argued that TGIF was involved in various roles in creating the product, including that licensed its trademark to Inventure. *Id.* The court rejected the plaintiff's wide-ranging allegations as "wholly conclusory" and noted that the product's packaging demonstrated

---

[5] Defendants also point to the back label of the Product to prove that TGIF is a mere licensor. [27-1, at 2.] The Court can take judicial notice of such documents in the public record they are "not subject to reasonable dispute." Fed. R. Evid. 201(b)–(c); *Pugh v. Tribune Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008). While Plaintiff does not allege that she saw the back portion of the package on Amazon.com [18, at ¶¶ 84–85], she does not dispute its accuracy.

that TGIF was only a licensor of the branded chips. *Id.* (noting that in *Hilsley* and *Parent*, the court dismissed defendants who merely owned the mark to a product).

The Court concludes the same here. While *Troncoso* applies New York law and *Hilsley* and *Parent* apply California law, the Court agrees that "an allegation that a party has licensed its trademark to appear on a product is not, by itself, sufficient to state a claim for liability for misleading representations that appear on the product." *Id.* While Plaintiff makes wide-ranging allegations in her complaint about TGIF's role in the creation of the Product, the Product's packaging—and the complaint—show that TGIF is only the licensor of the mark. See *Forrest v. Universal Savings Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007) ("Where an exhibit and the complaint conflict, the exhibit typically controls."). Plaintiff's other allegations are wholly conclusory and insufficient to render TGIF liable. See *Brooks*, 578 F.3d at 581 (quoting *Iqbal*, 556 U.S. at 678) (cleaned up) (noting that the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements"). As such, the Court dismisses TGIF as a defendant.

### C. Motion to Dismiss Count I - ICFA Claim

Defendants argue that Count I should be dismissed because a reasonable consumer would not interpret the Product's packaging to denote that the Product contains mozzarella cheese. [23, at 15–19.] The Court finds that, at this stage, Plaintiff sufficiently alleges that a reasonable consumer could infer from the Product's packaging a representation that the Product contains mozzarella cheese.

"The ICFA provides a remedy for consumers who have been victimized by deceptive or unfair business practices." *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1000 (7th Cir. 2018). To state an ICFA claim, Plaintiff must plead that: (1) the defendant committed a deceptive or

unfair act; (2) the defendant intended that others rely on the deception; (3) the act occurred in the course of trade or commerce; and (4) the act caused actual damages. *Benson v. Fannie May Confections Brands, Inc.,* 944 F.3d 639, 646 (7th Cir. 2019) (citing *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019)). ICFA allows a plaintiff to premise her claim on either deceptive conduct, unfair conduct, or both. *Vazant*, 934 F.3d at 738. Because Defendants' argument centers on Plaintiff's allegation of deceptive conduct, the Court similarly focuses on Plaintiff's allegations of deceptive conduct.[6]

A practice is deceptive when "it creates a likelihood of deception or has the capacity to deceive." *Benson*, 944 F.3d at 646 (quoting *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001)). "Courts apply the 'reasonable consumer' standard to analyze the likelihood of deception." *Id.* (citing *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015)). This standard requires a "practical and fact-intensive approach to consumer behavior," *Bell v. Publix Super Markets, Inc.,* 982 F.3d 468, 477–78 (7th Cir. 2020), which looks at the "probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled," *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 937 (7th Cir. 2021) (quotation omitted). The most important consideration is "how real consumers understand and react to the advertising." *Bell*, 982 F.3d at 476.

Deceptive advertising claims based on "unreasonable or fanciful interpretations of labels" may be dismissed on the pleadings. *Bell*, 982 F.3d at 477. If there are two reasonable interpretations of a label, one that is deceptive and one that is not, the court cannot dismiss the claim. *Id.* at 476–77. Accordingly, courts in this circuit have denied motions to dismiss in deceptive advertising cases when a product's packaging is subject to different plausible

---

[6] The Court notes that while Defendants contend that their argument applies to both unfair conduct and deceptive conduct, the reasonable consumer standard applies only to deceptive conduct claims under ICFA. See *Rudy v. Family Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1158 (N.D. Ill. 2022).

interpretations. See, *e.g.*, *Johnston v. Kashi Sales, LLC*, 2022 WL 4103973, at *7 (S.D. Ill. Sept. 8, 2022) (denying a motion to dismiss a deceptive advertising claim because the phrase "Ripe Strawberry" could be plausibly interpreted to denote a "flavor, smell, ingredient, or a process (i.e., selecting only fruit that is ripe)"); *Harris v. Conagra Sales, LLC*, 2022 WL 2390933, at *3 (N.D. Ill. July 1, 2022) (denying a motion to dismiss a deceptive advertising claim because it was "unclear" whether the phrase "mixed berry" denoted "a flavor or ingredient"); *Kinman v. Kroger Co.*, 2022 WL 1720589, at *6 (N.D. Ill. May 27, 2022) (denying a motion to dismiss a deceptive advertising claim because the plaintiff's understanding that "smoked gouda" meant that the cheese was smoked over hardwood was "not an inherently fanciful or unreasonable interpretation, because the word 'smoked' has at least two meanings"); *Elder v. Bimbo Bakeries USA, Inc.*, 2022 WL 816631, at *2 (S.D. Ill. Mar. 17, 2022) (denying a motion to dismiss a deceptive advertising claim because "[t]he phrase 'All Butter' is subject to different plausible interpretations and is therefore ambiguous"); *Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1159 (N.D. Ill. 2022) (denying a motion to dismiss a deceptive advertising claim because "the term 'smoked' may be used to describe a flavor, as Family Dollar suggests, it can also be used to describe a process").

Defendants argue that the only reasonable interpretation of the Product as a "shelf-stable, crunchy snack product" is that it bears no resemblance to the hot appetizer mozzarella cheese sticks and therefore, does not necessarily contain mozzarella cheese, pointing out the lack of representations on the Product's packaging that the Product contains mozzarella cheese or photos of mozzarella cheese. [23, at 15–16.] While Defendants are correct that the Packaging does not explicitly state that it "contains mozzarella cheese," Defendants' interpretation of the Product is not the only reasonable interpretation of the Product's packaging. As Plaintiff suggests [26, at

19–20], another reasonable interpretation is that a product labelled "Mozzarella Stick Snacks" with an image of mozzarella sticks would bear some resemblance to mozzarella sticks, which presumably contain some mozzarella cheese. This aligns with the reasonable consumer standard, which does not require that a consumer "parse every front label or read every back label before placing groceries in their carts." *Bell*, 982 F.3d at 477. Plaintiff's interpretation of the Product's packaging is a plausible interpretation. If a product does not contain mozzarella cheese, why market it under the TGIF logo, which has a strong correlation to the hot appetizer mozzarella sticks, which presumably contain some quantity of mozzarella cheese?

Defendants' only argument against this interpretation is that because the Product is a "shelf-stable, crunchy snack product," it could not feasibly contain mozzarella cheese. [23, at 15–16.] Defendants' common sense approach must fail under prevailing caselaw at this stage of the case. The Seventh Circuit's decision in *Bell* is on point. In that case, the Court of Appeals rejected the district court's "common sense" argument that a reasonable consumer could not reasonably assume that shelf-stable parmesan cheese would be nothing but parmesan cheese. *Bell*, 982 F.3d at 482. The Seventh Circuit noted that this argument strayed from the Rule 12(b)(6) standard and that grated parmesan can be shelf-stable and often is. *Id.* "[S]ince pure grated Parmesan can be and sometimes is sold unrefrigerated, common sense is not a substitute * * * for evidence" and does not constitute grounds to dismiss a claim "as a matter of law." *Id.*

The same principle applies in the present case. As Plaintiff points out, "there are many similar shelf-stable snack products on the market which contain a variety of other types of cheese," which "distinguish themselves from one another based the variety of cheese they contain" and are "prominently displayed on their labels," as alleged in the complaint. [26, at 20.]

13

The Court agrees. Defendant has not indicated why mozzarella is inherently not shelf-stable, other than making the type of "common sense" argument disapproved of in *Bell*. Further, how reasonable consumers actually understand Defendants' statement that the Product was akin to "Mozzarella Stick[s]" is a question of fact that cannot be resolved on the pleading. See *Bell*, 982 F.3d at 483. Because Plaintiff's proposed interpretation is plausible, the Court cannot dismiss Plaintiff's claim at this stage on these grounds.

Second, Defendants argue that Plaintiff is impermissibly relying on violations of the Federal Food, Drug and Cosmetic Act ("FDCA") and the Illinois Food, Drug and Cosmetic Act ("Illinois FDCA") to allege a violation of ICFA.[7] [23, at 18–19.] In her complaint, Plaintiff alleges that Defendants committed "deceptive and unlawful" conduct by violating the FDCA and the Illinois FDCA. [18, at ¶¶ 116–21, 136.] The Court declines to dismiss Plaintiff's ICFA claim at this stage but encourages Plaintiff to consider amending her complaint to state what deceptive practice she alleges violates ICFA. Based on the complaint, it seems as though Plaintiff is gesturing toward food labelling requirements as support that Defendants committed a deceptive practice, in addition to other alleged misconduct. See, *e.g.*, *Karlinski v. Costco Wholesale Corp.*, 2022 WL 2867383, at *9 (N.D. Ill. July 21, 2022) (noting in response to a similar argument that plaintiff was not attempting to enforce the FDCA but rather "gesturing to federal regulations surrounding food labeling" as support for "his theory that consumers would be misled"). If Plaintiff's theory was supported only by regulatory violations under the FDCA and Illinois FDCA, her case would be weak, because "average consumers are not likely to be aware of the nuances of the FDA's regulations." *Id.* However, as even Defendants

---

[7] Defendants additionally compare Plaintiff's allegations to those in *Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 742 (N.D. Ill. 2019). [23, at 18.] The Court disagrees. As Plaintiff points out, she does not allege or argue for a *per se* violation under 815 ILL. COMP. STAT. 505/2Z in her complaint. Compare *Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 742 (N.D. Ill. 2019); with [18.] As such, *Stemm* is inapplicable.

acknowledge, "Plaintiff has alternative bases for her ICFA claim." [27, at 12.] That said, an amended complaint could more clearly state how the alleged deceptive conduct without regard to the FDCA and Illinois FDCA. See, *e.g.*, *Grove Fresh Distributors, Inc. v. Flavor Fresh Foods, Inc.*, 720 F. Supp. 714, 716 (N.D. Ill. 1989) (indicating that a plaintiff could use the FDCA "to establish the standard or duty which defendants allegedly failed to meet," but that a claim based solely on a violation of the FDCA would be insufficient to sustain a false marketing claim); see also *Benson*, 944 F.3d at 645 (holding that there is no private right of action under the FDCA). Nevertheless, the Court declines currently to dismiss Plaintiff's ICFA claim.

### D. Motion to Dismiss Count III - Unjust Enrichment Claim

Defendant argues that Plaintiff's claim for unjust enrichment must be dismissed because Plaintiff fails to adequately allege an inadequate remedy at law under *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730 (N.D. Ill. 2019). [23, at 21.] Plaintiff alleges that "[w]hen a specific contract does not govern the relationship of the parties, and, therefore, no adequate remedy at law is applicable, an equitable remedy under a theory of unjust enrichment is available." [18, at ¶ 144.] The Court disagrees with Defendant's reading of *City of Rockford* and finds that Plaintiff adequately pleads her unjust enrichment claim.

A court in *City of Rockford* noted, "Illinois law requires that relief under an unjust enrichment theory is obtainable only when there is no adequate remedy at law available to the plaintiff." *City of Rockford*, 360 F. Supp. 3d at 771. The court further stated that the Plaintiff could not maintain its unjust enrichment claim "when in that same claim it references legal remedies available to it." *Id.* Rather, the plaintiff must plead in the alternative and not reference other claims with legal remedies. *Id*. *City of Rockford* did not create a new pleading requirement for unjust enrichment claims; rather, the court in *City of Rockford* merely reinforced

the existing rule that the plaintiff must plead an unjust enrichment count in the alternative to other legal remedies and may not incorporate by reference allegations regarding the existence of a contract. FED. R. CIV. P. 8(a)(3); *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013). Accordingly, Plaintiff's claim for unjust enrichment is adequately pled and the Court declines to dismiss on these grounds.

Defendants additionally contend that even if Plaintiff's claim is not dismissed due to pleading deficiencies, it should be dismissed as a matter of law because it relies on the same factual allegations as her ICFA claim. [23, at 21–22.] However, because the Court denied the Defendants' motion to dismiss Plaintiff's ICFA claim, the Court accordingly denies the Defendants' motion to dismiss Plaintiff's unjust enrichment claim, which rests on the same alleged misconduct. See *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011).

## III.  Motion to Strike Class Allegations

Plaintiff seeks to represent a nationwide class consisting of "[a]ll persons in the United States who purchased TGI Friday's Mozzarella Sticks Snacks" and an Illinois subclass consisting of "[a]ll persons in Illinois who purchased TGI Friday's Mozzarella Sticks Snacks." [18, at ¶¶ 20–21.] Plaintiff's nationwide class applies to Counts II and III in her complaint. [*Id.*, at ¶¶ 128–57.] Defendant argues that Plaintiff's nationwide class allegations, which concern the laws of all fifty states and District of Columbia, should be stricken because her class definitions are inherently unmanageable. [23, at 9–13.]

### A.  Legal Standard for Motions to Strike

"At an early practicable time after a person sues * * * as a class representative, the court must determine by order whether to certify the action as a class action." FED. R. CIV. P. 23(c)(1)(A). "When a plaintiff's class allegations are facially and inherently deficient * * * a

motion to strike class allegations can be an appropriate device to determine whether the case will proceed as a class action." *Garvey v. Am. Bankers Ins. Co. of Fla.*, 2019 WL 2076288, at \*1 (N.D. Ill. May 10, 2019) (cleaned up and citation omitted); *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) (holding that a court may deny class certification even before a motion for certification is filed).  However, "[m]ost often it will not be 'practicable' for the court to [strike class allegations] at the pleading stage[.]" *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013).  If "the dispute concerning class certification is factual in nature and 'discovery is needed to determine whether a class should be certified,' a motion to strike the class allegations at the pleading stage is premature." *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014) (quoting *Wright v. Family Dollar, Inc.*, 2010 WL 4962838, at \*1 (N.D. Ill. Nov. 30, 2010)); see also *Mirfasihi v. Fleet Mortgage Corp.,* 450 F.3d 745, 750 (7th Cir. 2006) (noting that "choice-of-law issues in nationwide class actions are rarely so uncomplicated that one can delineate clear winning and losing arguments at an early stage in the litigation").  "The burden lies with the defendant on a motion to strike to definitively establish that a class action cannot be maintained consistent with the class allegations." *Dowding v. Nationwide Mut. Ins. Co.*, 490 F. Supp. 3d 1291, 1298 (N.D. Ill. 2020).

### B.  Striking Plaintiff's Nationwide Class Allegations

Although the Court has doubts about whether Plaintiff's nationwide class allegations are manageable, the Court agrees that Defendant's arguments are, at this stage, premature.  [26, at 9–11.]

As an initial matter, Defendants' argument that "[t]he Seventh Circuit has long affirmed that nationwide classes are not manageable when they implicate laws of numerous states" is

misleading and incorrect as a matter of law.[8]  [23, at 10.]  While the Court of Appeals has clearly expressed skepticism of nationwide classes—a sentiment shared by this Court—it has not categorically prohibited them.  See *Martin v. Reid*, 818 F.3d 302, 308 (7th Cir. 2016) (noting that *In Re Bridgestone* "did not mean that nationwide classes are impermissible as a matter of law").  To the contrary, the Seventh Circuit has explicitly stated that "there is not and should not be a rule" to that effect.  *Pella Corp. v. Saltzman*, 606 F.3d 391, 393 (7th Cir. 2010).

Indeed, "[c]ourts in this district have largely declined to strike nationwide class allegations at the pleading stage where a party argued that a variation in state laws made a nationwide class impracticable."  *Flaherty v. Clinique Laboratories LLC*, 2021 WL 5299773, at *7 (N.D. Ill. Nov. 15, 2021) (citing five cases where courts in this District have denied motions to strike class allegations at the pleading stage).  Courts generally have struck class allegations only (1) when the Defendant has conducted "in-depth analysis of the many ways in which the laws of the states that comprise the proposed classes conflict," *Cowen v. Lenny & Larry's, Inc.*, 2017 WL 4572201, at *4 (N.D. Ill. 2017), or (2) after choice of law issues had already been determined, *Miles v. Am. Honda Motor Co., Inc.*, 2017 WL 4742193, at *5 (N.D. Ill. 2017).

Neither condition is met here.  As an initial matter, choice of law issues have not been decided.  *Miles*, 2017 WL 4742193, at *5.  Defendants further fail to offer an "in-depth analysis of the many ways in which the laws of the states that comprise the proposed classes conflict." *Cowen*, 2017 WL 4572201, at *4.  While the Defendants offer a belated choice-of-law analysis in their reply brief [27, at 9–10], the Court does not find it persuasive.  Compare *Kubilius v.*

---

[8] In *In re Bridgestone*—the case that Defendants cite for this proposition—the Seventh Circuit had the benefit of full class certification briefing, including arguments about how to assess choice of law issues, before deciding to dismiss class allegations.  See *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015–18 (7th Cir. 2002); see also *Tex. Hill Country Landscaping, Inc. v. Caterpillar, Inc.*, 522 F. Supp. 3d 402, 409 (N.D. Ill. 2021) (citing other Seventh Circuit cases where the court has similarly struck class allegations at the class certification stage).  As such, Defendants' argument falls flat.

*Barilla Am., Inc.*, 2019 WL 2861886, at *3 (N.D. Ill. 2019) (dismissing plaintiff's nationwide class allegations when the defendant "identifie[d] several" specific conflicts of state law that rendered the class unmanageable); and *Cowen*, 2017 WL 4572201, at *3–5 (granting motion to strike nationwide class allegations where "defendant used five pages of its motion * * * to demonstrate 'specific impediments' to class certification in the way of conflicting state laws" and plaintiff failed to rebut defendant's analysis); with *Bietsch v. Sergeant's Pet Care Prod., Inc.*, 2016 WL 1011512, at *11 (N.D. Ill. Mar. 15, 2016) (dismissing a motion to strike class allegations as inherently unmanageable when the defendant only "generically recite[d] differences in the state laws under which Plaintiffs seek to proceed"); *Rysewyk v. Sears Holdings Corp.*, 2015 WL 9259886, at *8 (N.D. Ill. Dec. 18, 2015) (refusing to strike class allegations as inherently unmanageable where defendants did not show "specific impediments" to a multistate class); and *Mednick v. Precor, Inc.*, 2014 WL 6474915, at *7 (N.D. Ill. Nov. 13, 2014) (deferring consideration of impact of state law variations until class certification stage due to the lack of fact discovery).

In the present case, Defendants generally point to the varying requirements of reliance, notice, statutes of limitations, standing, scienter, and damages across various states without identifying how those differences might affect Plaintiff's proposed class. [27, at 9–10.] Even if Defendants are correct that Plaintiff's nationwide class allegations are inherently unmanageable, the Court needs additional factual development to determine whether any of the alleged differences in state law create a conflict for Plaintiff and potential class members or whether the class device may be manageable and otherwise appropriate to adjudicate one or more non-nationwide classes or subclasses.[9]  See *Tex. Hill Country Landscaping, Inc. v. Caterpillar, Inc.*,

---

[9]  Defendants additionally cite this Court's opinion in *In re Fluidmaster, Inc., Water Connector Components Products Liab. Litig.*, 2017 WL 1196990 (N.D. Ill. Mar. 31, 2017) to argue that their

522 F. Supp. 3d 402, 411–12 (N.D. Ill. 2021); see also *Mednick*, 2014 WL 6474915, at *7 (holding that "the mere possibility that the presence of class members in other states may require the application of different state laws does not satisfy the facially and inherently deficient standard"). The Court is hard-pressed to state that Plaintiff's class action is inherently unmanageable based on variations in state law at this early stage when it is not clear which state law will ultimately present an issue or whether similarities in some—though not all—state laws would justify class treatment.

For instance, Plaintiff could use subclasses to bypass potential conflicts of state law. See *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 798–99 (7th Cir. 2013) (explaining that district courts may address complications arising from variances in state laws through the creation of subclasses). Alternatively, plaintiff could certify a common question of fact, see *Zurbriggen v. Twin Hill Acquisition Co., Inc.*, 338 F. Supp. 3d 875, 904 (N.D. Ill. 2018), or an issue class, see *Bennett v. Dart*, 2022 WL 16915837, at *1 (7th Cir. Nov. 14, 2022); FED. R. CIV. P. 23(c)(4). While none of these possibilities should be foreclosed at this early stage of the case, it likewise is by no means clear that any provides a clear path to certification of *any* class, much less the sweeping class contemplated by Plaintiff. Going forward, Plaintiff should take care in defining her proposed classes and subclasses in her motion for class certification and to set out clearly which laws she purports to seek relief under.

## IV.    Conclusion

For the foregoing reasons, Defendant's motion to dismiss [22] is granted in part and

---

provision of a fifty-one-state survey is sufficient to argue that state laws differ significantly to avert class certification. [23, at 13–14.] *Fluidmaster* is inapposite to the present procedural posture. The Court in *Fluidmaster* dismissed plaintiff's complaint on a motion for certification after plaintiff had an opportunity for discovery. *In re Fluidmaster, Inc.*, 2017 WL 1196990, at *1. Armed with both a similar survey to that Defendants offer here and additional fact discovery, the Court had sufficient information to determine whether plaintiff's suit met the requirements of Rule 23. *Id.* at *37. As the Court does not have such information here, *Fluidmaster* is inappropriate.

denied in part.  Defendant TGIF is dismissed.  The parties are directed to file a joint status report with an updated discovery plan by December 19, 2022.

Dated:  November 28, 2022

_____
Robert M. Dow, Jr.
United States District Judge