UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| AMY JOSEPH, individually and on behalf of all others similarly situated,<br><br>　　Plaintiff,<br><br>　v.<br><br>INVENTURE FOODS, INC.,<br><br>　　Defendant. | No. 21 cv 1340<br><br>Magistrate Judge Young B. Kim |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AGREEMENT**

　　　　　　　　　　　　　　　　　　Thomas A. Zimmerman, Jr.
　　　　　　　　　　　　　　　　　　*tom@attorneyzim.com*
　　　　　　　　　　　　　　　　　　Sharon A. Harris
　　　　　　　　　　　　　　　　　　*sharon@attorneyzim.com*
　　　　　　　　　　　　　　　　　　Matthew C. De Re
　　　　　　　　　　　　　　　　　　*matt@attorneyzim.com*
　　　　　　　　　　　　　　　　　　Jeffrey D. Blake
　　　　　　　　　　　　　　　　　　*jeff@attorneyzim.com*
　　　　　　　　　　　　　　　　　　ZIMMERMAN LAW OFFICES, P.C.
　　　　　　　　　　　　　　　　　　77 W. Washington Street, Suite 1220
　　　　　　　　　　　　　　　　　　Chicago, Illinois 60602
　　　　　　　　　　　　　　　　　　(312) 440-0020 telephone
　　　　　　　　　　　　　　　　　　(312) 440-4180 facsimile
　　　　　　　　　　　　　　　　　　www.attorneyzim.com

　　　　　　　　　　　　　　　　　Counsel for the Plaintiff and Settlement Class

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND............................................1

    A. Litigation and Settlement History................................................................1

    B. The Terms of the Settlement Agreement .....................................................2

    C. The Court's Preliminary Approval Order ....................................................4

    D. Settlement Class Members' Response to the Settlement .............................4

III. LEGAL STANDARD.............................................................................................6

IV. ARGUMENT..........................................................................................................6

    A. The Settlement Class Should Be Certified...................................................6

    B. The Notice Program Satisfied Due Process .................................................7

    C. The Settlement is Fair, Reasonable, and Adequate and Should Be Finally Approved.......................................................................................................8

        1. The Strength of Plaintiffs' Case Compared to the Terms of the Proposed Settlement ................................................................................9

        2. The Likely Complexity, Length, and Expense of Continued Litigation......9

        3. The Amount of Opposition to the Settlement Among Affected Parties ....10

        4. The Opinion of Competent Counsel ........................................................10

        5. The Stage of the Proceedings and the Amount of Discovery Completed at the Time of Settlement................................................................................11

        6. Plaintiff and Class Counsel Adequately Represented the Class ................12

        7. The Settlement Was Negotiated at Arm's Length .....................................12

        8. The Settlement Benefits Are Adequate......................................................12

        9. The Proposal Treats Class Member Equitably Relative to Each Other .....14

V. CONCLUSION.....................................................................................................14

# **TABLE OF AUTHORITIES**

*Cases*

*American Civil Liberties Union of Ill. v. U.S. Gen. Servs. Admin.*,
 235 F. Supp. 2d 816 (N.D. Ill. 2002) ..............................................................................10

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
 No. 07 Civ. 2898, 2012 U.S. Dist. Lexis 25265 (N.D. Ill. Feb. 28, 2012) .....................6

*Charvat v. Valente*,
 12-cv-05746, 2019 WL 557932 (N.D. Ill. Oct. 28, 2019) ...........................................14

*Felzen v. Andreas*,
 134 F.3d 873 (7th Cir. 1998) .........................................................................................6

*Isby v. Bayh*,
 75 F.3d 1191 (7th Cir. 1996) .......................................................................................11

*In re Mexico Money Transfer Litig.*,
 164 F. Supp. 2d 1002 (N.D. Ill. 2000) .........................................................................10

*Mullins v. Direct Digital, LLC*,
 795 F.3d 654 (7th Cir. 2015) .......................................................................................13

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*,
 314 F.R.D. 580..............................................................................................................7

*Patterson v. Stovall*,
 528 F.2d 108 (7th Cir. 1976) .........................................................................................6

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
 463 F.3d 646 (7th Cir. 2006) .........................................................................................8

*In re TikTok, Inc., Consumer Privacy Litig.*,
 617 F. Supp. 3d 904 (N.D. Ill. 2022) .............................................................................6

*Uhl v. Thoroughbred Tech. and Telecommc'ns, Inc.*,
 309 F.3d 978 (7th Cir. 2002) .........................................................................................6

*Statutes*

Fed. R. Civ. P. 23(a) ................................................................................................... 6-7

Fed. R. Civ. P. 23(b)(3)............................................................................................... 6-7

Fed. R. Civ. P. 23(e)(1)(ii)..............................................................................................6

Fed. R. Civ. P. 23(e)(2)................................................................................................8

Fed. R. Civ. P. 23(e)(2)(A)–(D).....................................................................................9

Fed. R. Civ. P. 23(e)(3)................................................................................................8

410 ILCS 620/1, *et seq.*............................................................................................1

815 ILCS 505/1, *et seq.*............................................................................................1

***Other Authorities***

*Fed. Judicial Ctr. Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 2* (2010) .......................................................................................7

**I.     INTRODUCTION**

Plaintiff AMY JOSEPH ("Plaintiff") by and through undersigned counsel, moves for an order finally approving the class action settlement. A proposed order is attached hereto as <u>Exhibit A</u>.

The Settlement achieves considerable benefits for Settlement Class Members—a Settlement Fund of $900,000 to pay eligible claimants on a pro rata basis.[1] The Settlement is fair and reasonable, and the Notice Program approved by the Court has been carried out as ordered. Settlement Class Members' response to the Settlement has been overwhelmingly positive and reinforces the Court's determination on preliminary approval regarding the fairness of the Settlement. The Settlement Administrator has assessed that 80% of the Class received notice of the Settlement. In response, there were **no objections**, and only **one request to opt out** of the Settlement. There were 132,842 approved Claims, counseling in favor of the Settlement's approval.

Plaintiff now requests that the Court finally certify the Settlement Class under Fed. R. Civ. P. 23(b)(3) for settlement purposes only, find that the Notice Program satisfied Rule 23 and due process, and enter final approval and judgment on the Settlement as set forth in <u>Exhibit A</u>.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

    **A.     Litigation and Settlement History**

Plaintiff filed her complaint in the Circuit Court of Cook County[2] on February 5, 2021, asserting claims against Defendants Inventure Foods, Inc. and TGI Friday's, Inc. for violation of the Illinois Food, Drug, and Cosmetic Act, 410 ILCS 620/1, *et seq.*, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*, and cognate state

---

[1] Plaintiff incorporates the definitions from the Settlement Agreement. *See* Settlement Agreement § II.
[2] Defendants removed this case to federal court.

1

laws of other states, and a claim for unjust enrichment. Dkt. 1. Plaintiff sought to represent a class of consumers nationwide who purchased TGI Friday's Mozzarella Sticks Corn Snacks (the "Products"). *Id*. Plaintiff alleged that Defendants manufactured, labeled, marketed, and sold the Products using false representations that the Products contained actual mozzarella cheese when they did not.

On November 28, 2022, the Court decided Defendants' motion to dismiss, dismissed TGI Friday's from the case, but denied the motion with respect to Inventure. Dkt. 40. On the same date, the parties held a second preliminary settlement discussion that benefitted from the guidance of Magistrate Judge Kim. Dkt. 42. On December 5, 2022, the parties held another preliminary settlement discussion with Magistrate Judge Kim, where they agreed to conduct an in-person settlement conference on February 17, 2023. Dkt. 44.

On February 17, 2023, at the settlement conference mediated by Magistrate Judge Kim, the Parties reached the general terms of the classwide settlement memorialized in the Settlement Agreement. Dkt. 49. The Parties worked cooperatively over the next couple months to draft, negotiate, and finalize the remaining terms of the Settlement Agreement, agree upon and engage the notice and claims administrator, and prepare the necessary notice and claims materials. *See* Declaration of Thomas A. Zimmerman, Jr. in Support of an Award of Attorneys' Fees, Costs, and a Service Award ("Zimmerman Decl.") ¶ 32, Dkt. 65-1. On May 24, 2023, Plaintiff filed the Motion for Preliminary Approval of the Settlement.

    **B.**    **The Terms of the Settlement Agreement**

The terms of the Settlement Agreement provide a substantial recovery for Settlement Class Members. The Settlement Agreement provides for the establishment of a Settlement Fund in the amount of $900,000 to pay (1) the Claims made by Class Members who submit a timely and

complete Claim Form up to $6.00 per household depending on the amount of Eligible Products purchased, (2) all costs of Notice and administration, including, without limitation, providing requisite notice to governmental agencies and authorities as more fully set forth in Section V.A.3 of the Settlement Agreement; (3) any Service Award awarded by the Court to the Plaintiff; and (4) Attorneys' Fees and Expenses awarded by the Court. *See* Settlement Agreement ("SA") § IV.

The Settlement Class consists of all persons who, during the Class Period, purchased in the United States any size or variety of the Eligible Products, as that term is defined below. Excluded from the Class are: (a) Inventure's board members or executive level officers; (b) persons who purchased the Eligible Products primarily for the purpose of resale, including, but not limited to, retailers or re-sellers of the Eligible Products; (c) governmental entities; (d) persons who timely and properly exclude themselves from the Class as provided in the Settlement Agreement; and (e) the Court, the Court's immediate family, and Court staff. SA § II(9).

The Settlement defines "Eligible Product(s)" as "any and all shelf stable (*i.e.* not refrigerated or frozen) TGI Fridays brand Snacks of any size, style, flavor, and variety, manufactured, distributed or sold by Inventure that are or were labeled with the phrase 'TGI Fridays Mozzarella Sticks Snacks' or any other words or phrases to convey the same or similar meanings, including without limitation: a. TGI Fridays Mozzarella Sticks Snacks Original; b. TGI Fridays Mozzarella Sticks Snacks Original Flavor; and, c. TGI Fridays Mozzarella Sticks Snacks Original Flavor Baked." SA § II(16).

Eligible Class Members who made one or more Qualifying Purchases and submit a Claim Form pursuant to the terms and conditions of the Settlement Agreement are entitled to a payment of up to $0.30 per Qualifying Purchase up to a maximum of 20 Qualifying Purchases per household. SA § IV.D. Based on the number of valid Claims received, it is estimated that claimants

3

will receive approximately $0.27 per Qualifying Purchase, and the entire Settlement Fund will paid out. *See* Declaration of Dorothy Sue Merryman ("Merryman Decl.") ¶ 13, attached as <u>Exhibit B</u>. No money will revert to Defendant. *See* SA § IV.E. If checks issued to Class Members are not cashed within 90 days after the date of issuance, the check will be void, and any resulting unclaimed funds shall be part of the residual fund. SA § IV.E.3. The residual funds will be distributed to a non-profit organization, BBB National Programs, National Advertising Division upon Court approval. SA § IV.E.4. In exchange for this consideration, upon final judgment, Settlement Class Members who do not opt out release claims against Inventure and related entities, whether they submit a claim or not. SA § VIII.

The Settlement provides for Plaintiff to seek Court approval of a $2,500 service award, and for Plaintiff's counsel to seek Court approval for an award of attorneys' fees of $246,667 and costs of $863. SA § IX. Plaintiff has timely filed a motion requesting Court approval of such awards. *See* Dkt. 65.

      **C.**      **The Court's Preliminary Approval Order**

On June 6, 2023, the Court entered its Preliminary Approval Order, conditionally certifying the Settlement Class under Rule 23 of the Federal Rules of Civil Procedure, finding that the settlement was within the range of being finally approved as fair, reasonable, and adequate, and directing that notice be disseminated in accordance with the Notice Program. Dkt. 64.

      **D.**      **Settlement Class Members' Response to the Settlement**

On July 10, 2023, and continuing until September 25, 2023, the Settlement Administrator disseminated Notice pursuant to Section 8 of the Court's order granting preliminary approval. Merryman Decl. ¶ 7. The Court-approved Notice informed Settlement Class Members, among other things, of their rights to participate in the Settlement, submit Claims for compensation, and

4

their ability to learn more information at the Settlement website or toll free phone number administered by the Settlement Administrator. Merryman Decl. ¶ 7, and Exhibits 2 and 3 attached to the Merryman Decl. The Notice also explained Settlement Class Members' rights to object to the Settlement or to opt out, and how to do so if they wished. *Id.*

During the Notice Period, the Settlement Administrator estimated that 80% of the Settlement Class Members were notified of the Settlement. Merryman Decl. ¶ 7. The Claim Period ran for 75 days, starting from the date of the first dissemination of the Notice. SA §II.A.7. The Claim Period ended September 25, 2023. SA §II.A.7 During the Claim Period, the Settlement Administrator received 132,842 valid Claims; 510 calls were received at the toll-free phone number; and there were 1,956,569 visits to the Settlement website. Merryman Decl. ¶¶ 8, 9, 13.

Of note, the Settlement Administrator received a significant number of fraudulent claims. An investigation determined that one or more individuals were targeting the Settlement website with an artificial intelligence program that was filing Claims using auto-generated demographic data, such as names and addresses, in an attempt to collect Settlement payments. The artificial intelligence program generated over 1.8 million fraudulent Claims. Class-Settlement took steps to stem the tide of fraudulent Claims by blocking certain IP addresses and query strings, and adding additional CAPTCHA technology to the Settlement website, and these actions were successful in blocking the majority of the fraudulent Claim filing attempts from that point forward. Merryman Decl. ¶ 10. Additional Claims were denied for other various reasons. Merryman Decl. ¶ 11.

The deadline for opting out and objecting was August 22, 2023. SA §§VI.A, VII.A. **No objections** to the Settlement were submitted, and only **one person submitted a request to be excluded** from the Settlement. Merryman Decl. ¶ 14.

5

## III. LEGAL STANDARD

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Uhl v. Thoroughbred Tech. and Telecommc'ns, Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) ("Federal courts favor settlement, so the district court's inquiry into the settlement structure is limited to whether the settlement is lawful, fair, reasonable and adequate."). "In reviewing a proposed settlement the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). "Courts usually refuse to substitute their business judgment for that of counsel, absent fraud or overreaching." *Id.* A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 U.S. Dist. Lexis 25265, at *39 (N.D. Ill. Feb. 28, 2012) (citation omitted).

The Court may approve a class action settlement if: (1) it is able to certify the settlement class; (2) the class was provided adequate notice and public hearing; and (3) it determines that the settlement is fair, reasonable, and adequate. *In re TikTok, Inc., Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 921 (N.D. Ill. 2022).

## III. ARGUMENT

### A. The Settlement Class Should Be Certified

Pursuant to Fed. R. Civ. P. 23(e)(1)(ii), the Court should certify the Class for purposes of judgment on the Settlement. In doing so, the Court should find that the prerequisites for class certification under Rule 23(a) and the considerations under Rule 23(b)(3) are satisfied. Indeed, the Court has already found in its order entering preliminary approval that the Settlement Class

6

"appears to satisfy the requirements for class certification under Rule 23 for settlement purposes." Dkt. 64 at 3. The robust Notice Program and the favorable response from Settlement Class Members only serves to confirm the Court's findings regarding certification. Therefore, the Court should again find that the Settlement Class meets the elements for class certification under Rule 23(a) and (b)(3) for settlement purposes only.

B.     **The Notice Program Satisfied Due Process**

In the preliminary approval order, the Court held that:

> [t]he Notice Program is reasonably calculated to, under all circumstances, apprise the members of the Settlement Class of the pendency of this action, the conditional certification of the Settlement Class, the terms of the proposed Settlement Agreement, and the right of members to object to the Settlement or to exclude themselves from the Class; and The Notice Program is consistent with the requirements of Rule 23 and due process and constitute the best notice practicable under the circumstances.

Dkt. 64, p. 5.

The Declaration of Dorothy Sue Merryman confirms these findings and supports final approval of the Settlement. For example, the Notice reached approximately 80% of the Class Members. Merryman Decl. ¶ 7. Courts have assessed favorably notice programs that reach at least seventy percent of the class. *See In re Tik Tok*, 617 F. Supp. 3d. at 92-287 (citing Fed. Judicial Ctr. Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 2 (2010), https://www.fjc.gov/sites/default/files/2012/notcheck.pdf); *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 603 (finding that the proposed notice plan was "well within an acceptable range" where it was estimated to reach 80% of the class).

Here, the Notice Program was robust and met the requirements of due process and Rule 23 as the best notice practicable under the circumstances.

7

The Notice documents and Claim Form were in plain language and easy to understand. They directed Settlement Class Members with any questions to the Settlement Administrator-established website and toll-free phone number to provide further guidance and answer any additional questions that Settlement Class Members may have had. The form and contents of the Notice met due process and Rule 23.

### C. The Settlement Is Fair, Reasonable, and Adequate and Should Be Finally Approved

Courts in the Seventh Circuit consider the following factors when deciding whether a proposed class action settlement is fair, reasonable, and adequate: (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

Rule 23(e)(2) also required consideration of whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's-length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D).

### 1.    The Strength of Plaintiffs' Case Compared to the Terms of the Proposed Settlement

Plaintiff believes that the Action is meritorious and that she would ultimately prevail at class certification and trial were the case to be litigated to judgment. The complaint has set forth plausible facts sufficient carry the day on the elements of her claims. The merits of Plaintiff's case is suggested by the fact that Defendant changed its labeling to remove the challenged language from the labels of the Products.

The Settlement provides significant benefits when viewed in the context of the retail price of the Products and comparable products, and Defendant's revenues from the Products. The settlement relief is related to the theory of liability and presents a reasonable compromise of the case, providing meaningful monetary relief in exchange for peace of mind for all parties.

### 2.    The Likely Complexity, Length, and Expense of Continued Litigation

Although Plaintiff believes in the strength of her case, Plaintiff is mindful of the significant investment in costs and time that would be required to achieve such an outcome, including the prospect of a substantial motion for class certification, potential expert opinions regarding consumer perceptions and damages analyses, legal analysis consisting of a comparison of state laws, probable battle of the experts, motions to bar expert testimony, and dispositive motions relating to liability.

These decisions would be subject to appeal after conclusion of the case, which would add additional years to the length of the case, increasing costs and complexity. The Settlement achieves substantial benefits as well as peace of mind. The Settlement is adequate in light of the likelihood of delay, Defendant's assertion of multiple defenses, other potential risks, and the uncertainty of

9

ultimate recovery through continued litigation and a trial. Defendant is a well-capitalized, nationwide company that has defended this case vigorously and likely would do so through trial and appeal, were the Settlement not approved.

### 3. The Amount of Opposition to the Settlement Among Affected Parties

The response to the Settlement has been overwhelmingly favorable. The Settlement Administrator reports that no objections were made to the Settlement, and only one person has submitted a request to opt out of the Settlement. Merryman Decl. ¶ 14. Such a response confirms the fairness of the Settlement. *See American Civil Liberties Union of Ill. v. U.S. Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 819 (N.D. Ill. 2002); *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000) ("When 99.9% of class members have neither opted-out nor filed objections to the proposed settlements, [that is] strong circumstantial evidence in favor of settlement"). In addition, the Settlement Administrator disseminated notice to all Attorneys General pursuant to CAFA, and to date no Attorney General raised any objections or concerns.

### 4. The Opinion of Competent Counsel

Plaintiff's counsel has litigated consumer class actions for decades, with a considerable focus on false advertising cases, such as this. Plaintiff's counsel's considerable experience informed the assessment of the fairness and adequacy of the Settlement. In Plaintiff's counsel's view, the Settlement represents a favorable and reasonable resolution of the case, factors in the risks, costs, and length of the case to be settled, and provides timely and substantial relief to Settlement Class Members.

The Parties conducted a settlement conference before the Judge presiding over this matter. Guided by the Judge, the Parties were able to reach the terms of the Settlement as set forth in the Settlement Agreement. The Settlement was reached as a result of the Parties' arm's-length, good

faith, and hard-fought negotiations. These facts support final approval of the Settlement.

### 5. The Stage of the Proceedings and the Amount of Discovery Completed at the Time of Settlement

As explained in the Zimmerman Declaration (Dkt. 65-1), Plaintiff conducted substantial research using publicly available information regarding product pricing and ingredients, and the Parties exchanged informal discovery sufficient to allow Plaintiff's counsel to undertake a fulsome and extensive analysis of the class size, the magnitude of aggregate damages, and the basis for calculating reasonable offers of settlement. Zimmerman Decl. ¶ 15. Plaintiff issued two sets of discovery requests, to which Defendants provided responses, while the motion to dismiss was pending. Class Counsel reviewed and analyzed the documents and data produced by Defendants, and prepared a settlement demand based on their thorough analysis of the data provided by Defendants and the facts of the case. *Id*. ¶ 26. On December 12, 2022, Defendant Inventure answered the Amended Complaint. Dkt. 46. In connection with the Parties' mediation, Plaintiff obtained, *inter alia*, the following discovery pertaining to the Products throughout the Class Period: (i) exemplar labels for all sizes of the Products; (ii) information regarding the use of the phrase "Mozzarella Sticks" on the Products' labels; (iii) the Products' formulation; and (iv) pertinent financial information, including sales data associated with the Products by year, package size and geographic region. Zimmerman Decl. ¶ 30. Plaintiff also produced to Defendant additional information regarding Plaintiff's purchases of the Products.

Thus, the Parties were able to share the critical discovery needed to achieve a resolution, increasing the efficiency and economy of the case, ensuring that needless resources are not expended in litigation. *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (noting that although settlement was achieved early in the stage of the litigation, negotiations were extensive and thorough).

### 6. Plaintiff and Class Counsel Adequately Represented the Class

Plaintiff and Class Counsel advanced the interests of the Class in achieving a favorable resolution of the claims at a relatively early stage of the litigation. Class Counsel conducted significant research in drafting their original and amended complaint, successfully defended their claims against Defendants' motion to dismiss, and earned the Settlement through hard-fought, good faith, arm's-length negotiations. Plaintiff and Class Counsel conducted all the due diligence necessary to assure themselves that the Settlement was in the best interests of the Settlement Class. The overwhelmingly favorable response from Settlement Class Members confirms Plaintiff's and Class Counsel's adequacy.

### 7. The Settlement Was Negotiated At Arm's-Length

The Settlement was achieved through arm's-length negotiations during a settlement conference presided over by Magistrate Judge Kim. The Parties were able to reach this resolution with Magistrate Judge Kim's assistance, after conducting substantial analysis of the facts and law, and assessing the prospects of further litigation in lieu of Settlement.

### 8. The Settlement Benefits Are Adequate

Taking into account the costs, risks, and delay of trial and appeal, the effectiveness of the method of processing claims and distributing relief, Class Counsel's fee request, and the lack of side agreements, the Settlement benefits are adequate.

As explained above, the Settlement was achieved relatively early in the litigation before substantial discovery regarding potentially highly contested factual issues relating to liability. Thus, the Settlement avoids significant costs, delay, and resource expenditures related to expert analysis related to damages and consumer perceptions, complex analyses comparing the potentially applicable state laws, and other discovery issues attendant to class action litigation.

Because Defendant is well-capitalized, it would likely defend the case at every turn, including on appeal, which could take years to ultimately resolve.

Because the Settlement Class must self-identify and claim the amount of money to be awarded, the methods for processing claims and distributing relief are reasonable and effective. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 667–68 (7th Cir. 2015). As with other consumer fraud cases, automatic distribution of awards to already known class members is not possible. Here, the claims process is similar to those that have been approved in numerous consumer fraud class action settlements. Exhibit 7 to the Settlement Agreement sets forth in detail the roles and responsibilities of the Claims Administrator, in receiving and approving claims, and distributing Settlement benefits. Claims may be submitted in hard copy or online. *See id.* The Claim Form is easy to understand and easy to fill out. *See* Exhibit 1 to Settlement Agreement. No proof of purchase is required beyond the attestation of the claimant at the end of the claim form. *See id.* Claimants have the option of selecting one of a number of convenient methods for payment, including paper checks and electronic payment options, such as Venmo, prepaid payment card, and automatic deposit. *See id.*

As set forth in Plaintiff's motion for attorneys' fees, costs, expenses, and incentive awards, the requested attorneys' fee award is reasonable, fair, and consistent with awards in other similar cases. *See* Dkt. 65.

Lastly, there are no side agreements to consider. The only agreement to be considered is the Settlement Agreement.

For the foregoing reasons, the Settlement benefits are adequate.

        **9.**      **The Proposal Treats Class Member Equitably Relative to Each Other**

The Settlement benefits are equally available to all Settlement Class Members. Although a cap to individual claims exists, courts in the Seventh Circuit have approved such individual claims caps as reasonable in order to achieve the best possible payout. *See Charvat v. Valente*, 12-cv-05746, 2019 WL 557932, at *6 (N.D. Ill. Oct. 28, 2019). In *Charvat*, the court also observed that claimants with considerable damages claims could have requested to be exclude from the settlement. *Id.*

## V. CONCLUSION

For the reasons set forth above, Plaintiff requests that the Court grant final approval of the Settlement, in an Order substantially in the form of the proposed order, attached hereto as <u>Exhibit A</u>, and for such other relief as the Court deems appropriate.

                                              Plaintiff Amy Joseph, individually, and on behalf of all others similarly situated,

                                              By:  /s/ Thomas A. Zimmerman, Jr.
                                                     Thomas A. Zimmerman, Jr.
                                                       *tom@attorneyzim.com*
                                                       Sharon A. Harris
                                                       *sharon@attorneyzim.com*
                                                       Matthew C. De Re
                                                       *matt@attorneyzim.com*
                                                       Jeffrey D. Blake
                                                       *jeff@attorneyzim.com*
                                                       ZIMMERMAN LAW OFFICES, P.C.
                                                       77 W. Washington Street, Suite 1220
                                                       Chicago, Illinois 60602
                                                       (312) 440-0020 telephone
                                                      (312) 440-4180 facsimile
                                                      www.attorneyzim.com

                                             Counsel for the Plaintiff and Class